# Richmond.

### JAMES'S EXECUTOR AND OTHERS v. LIFE.

#### MARCH 19, 1896.

1. CHANCERY JURISDICTION—*Bill to Enforce a Judgment—Revival of Judgment.*—A bill in equity may be maintained against the personal representative of a decedent and his devisees or heirs at law to subject the real estate of the decedent to the payment of a judgment recovered against him in his lifetime, without first reviving such judgment at law.

2. CHANCERY JURISDICTION—*Bill to Enforce a Judgment—Within What Time it May be Filed—What Time Excluded.*—The right to file a bill in equity to enforce a judgment lien is co-extensive as to time with the right to sue out an execution on such judgment. And, in computing the time within which an execution is to be sued out, the time between January 1, 1869, and March 29, 1871, is excluded by express statutory provision. Sec. 3577 of Code.

3. PRESUMPTION OF PAYMENT—*Limitation.*—The mere efflux of time, short of twenty years, will not raise a presumption of payment of a debt not barred by the statute. In the case at bar, neither the lapse of time, the condition of the parties, the circumstances surrounding them, nor their relations to each other, justify such presumption.

Appeal from a decree of the Circuit Court of Pittsylvania county, pronounced December 1, 1892, in a suit in chancery, wherein the appellee was the complainant, and the appellants were the defendants.

*Affirmed.*

The opinion states the case.

*Berkeley & Harrison,* for the appellant.

*James L. Tredway* and *S. A. Anderson,* for the appellees

CARDWELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Pittsylvania county, and the first question presented is whether a judgment-lien creditor can maintain his suit in a court of equity to subject the real estate of his deceased debtor until he has revived his judgment at law against the personal representative.

The bill in this case was filed February 17, 1890, by Samuel Life, on behalf of himself and all other creditors of John C. James, deceased, who would come in and make themselves parties to the suit upon the usual terms. The bill sets forth that the plaintiff, on June 3, 1870, obtained a decree in the Circuit Court of Pittsylvania against the said John C. James for $982.62½, with interest thereon from November 4, 1863, till paid, and $169.68 costs; that execution issued thereon June 10, 1870, returnable to the following August rules, and was returned by the sheriff endorsed " No effects "; that the decree was placed upon the lien docket of Pittsylvania County Court clerk's office, and was a lien on the land of James; that James had died a few months prior to the filing of the bill, after making and publishing his last will and testament, which had been duly probated in the County Court of Pittsylvania, and that R. A. James, one of the executors named therein, had alone qualified as such.

The bill further charges that the testator, James, was, at the time of his death, seised and possessed of a large real and personal estate, which he disposed of by his will to his widow and children and a grandchild, the widow taking the whole of the personal estate after the payment of testator's debts, and the interest on the proceeds to arise from the real estate directed to be sold, during her widowhood, and at her death the principal fund to be divided among the testator's children and his grandchild.

To this bill R. A. James, in his own right and as executor, and all of the devisees and legatees named in the will, are made parties defendant, except the widow, Angeline James, and the prayer of the bill is that all necessary accounts be taken ; that a sufficient quantity of testator's lands be sold for the payment of the plaintiff's judgment lien thereon, &c., and for general relief.

On December 8, 1890, a decree was entered directing the accounts prayed for in the bill to be taken by one of the commissioners of the court.

R. A. James, in his own right and as executor, and R. B. James, another of the defendants, filed their separate demurrer and answer to the bill, which demurrer was overruled, and the account reported by the commissioner under the decree of December 8, in which the judgment of the plaintiff is reported as due and unpaid, was confirmed.

It is contended on behalf of appellant that it was error in the court below to overrule the demurrer, because the bill of the plaintiff did not show upon its face that the plaintiff had revived his judgment at law against the personal representative of the testator, James, before proceeding with his suit in equity.

In the case of *Taylor's Adm'r* v. *Spindle*, 2 Gratt. 44, the contention was that a judgment creditor had no right to relief in equity until he sued out his *elegit* at law. Stanard, J., who delivered the opinion of the court, says (p. 69) : " Among the numerous cases which for a series of years have passed through this court, and in which relief has been given to the judgment creditor by giving effect to his judgment lien, I do not recollect one in which the *elegit* had been actually sued out, and that stated as a part of the title to the aid of equity."

The argument of counsel for appellant in the case here under consideration—that the judgment of the appellee, Life, immediately upon the death of James, the debtor, became, as

it were, of suspended vitality until revived at law—is fully met by the decision of this court in *Burbridge* v. *Higgin's Adm'r,* 6 Gratt. 119, 127, wherein it is said: "Defendant contends that the decree did not bind, because it had not been revived, and no execution had issued upon it; but this question is settled by the case of *Taylor's Adm'r* v. *Spindle,* 2 Gratt. 44."

In the case of *Suckley's Adm'r* v. *Rotchford et als.,* 12 Gratt. 60, 68, Samuels, J., says: "The appellant's intestate, the judgment creditor, having established his debt against Libby in his lifetime, was not compelled to look to the real estate as merely a secondary fund for payment, but had the right to look upon the estate, real and personal, as equally liable. This right the creditor might exercise, unless some equitable reason would require him to proceed first against the personal estate." And further on, in discussing the contention that the judgment should have been revived at law before the suit in equity was brought, he says "that the judgment could have been revived against the devisees, and also against the executor," but considered neither necessary.

In the case of *The Bank of the Old Dominion* v. *Allen et als.,* 76 Va. 200, 206, this court appears to have treated the question as settled. That was a case in which a creditor's bill was filed to subject the lands of the debtors to the payment of the liens and encumbrances thereon, and no execution had issued on the judgment then under consideration, but the right to revive it upon *scire facias* still existed. Burks, J., says: "There was no necessity of reviving the judgment."

It may be said at this day that the right of a judgment creditor to bring his suit in equity against the personal representative and heirs or devisees of his deceased debtor before reviving his judgment at law has been generally recognized in the courts of the Commonwealth, and, besides this fact, no good reason has been, or can be, in our opinion, suggested for

requiring the creditor to first revive his judgment at law against the personal representative before coming into equity. The execution issuing upon the judgment so revived would not be effectual, as the assets in the hands of the personal representative could not be seized, but would have to be administered by him according to law. If the judgment had been paid this defence could be made as well in equity as at law.

We are therefore of opinion that the demurrer was properly overruled.

On the 16th of January, 1891, after the decree for an account, Mrs. Angeline James, who was omitted as a party defendant in the bill filed, was, under section 3292 of the Code, made a party defendant, and process against her ordered to be issued, which was done, and duly executed March 10, 1891. Upon her appearance she filed a plea of the statute of limitations to the decree in favor of the plaintiff reported by the master commissioner, and at the hearing of the cause the court below overruled her plea, and this action of the court constitutes appellant's second assignment of error.

The decree in favor of the plaintiff, as we have seen, was obtained on the 3d of June, 1870, and the return of the execution that issued thereon was made to the first Monday in August, 1870, and there being a return of the officer in whose hands it was placed endorsed thereon, the right to issue other executions within twenty years from the first Monday in August, 1870, followed; and the right of the plaintiff to file his bill in equity to enforce his judgment lien was co-extensive as to time with the right to issue execution thereon. *Hutcheson* v. *Grubbs*, 80 Va. 251, and authorities cited.

Under the plain meaning of section 3577 of the Code, which provides that in computing time under this section there shall, as to writs of *fieri facias*, be omitted from such computation the time elapsed between the first day of January, 1869, and the 29th day of March, 1871; that is, this

period is to be excluded in the computation of the time within which the plaintiff, Life, might issue his *fi. fa.* or file his bill in equity to enforce his judgment; therefore, the twenty years allowed by the statute did not expire until the 29th day of March, 1891, and hence, upon either view to be taken of this case, whether the statute of limitations stopped running as against the plaintiff upon the filing of his bill, or upon the entry of the order making Mrs. James a party, or upon the execution of the process upon her to answer the bill, her plea of the statute was properly rejected.

Having taken this view, it becomes unnecessary for us to construe the act of 1887–8, amending section 3577 of the Code so as to provide, in the computation of the time within which an execution may issue on a judgment, there shall be also omitted one year from the qualification of the personal representative.

The two remaining grounds of error assigned by appellant may be considered together.

It is contended that the bill should have been dismissed for *laches,* or that the court erred in not rejecting plaintiff's claim on the presumption of payment.

No authority can be found to justify the presumption of payment of a debt merely from the efflux of time, short of the period of twenty years, and in this case we find no evidence of *laches* on the part of the appellee that would have justified the court below in dismissing his bill. *Foster's Curator* v. *Rison et als.*, 17 Gratt. 321, 335. As to the circumstances relied on to raise the presumption of payment, they appear not only to be wholly insufficient to justify such a presumption, but strongly tend to establish the reverse. It is true that appellee's judgment was not entered on the lien docket of the County Court of Pittsylvania till October 24, 1889, and after the death of James, the debtor ; but this does not in any way affect the validity of the judgment as between

him and his debtor, James, or those claiming through and under the latter. It is shown that when the judgment was obtained, after a long and bitter litigation, James had been previously adjudged a bankrupt, and the records in Pittsylvania County Court did not disclose that he claimed to own any real estate until March, 1879, when he placed upon the record a deed of conveyance to himself of the land that he had surrendered in bankruptcy about ten years prior, purchased at a sale thereof in the name of a kinsman, but paid for by him, James. This circumstance would tend, at least, to show that James was concealing his property to avoid the payment of the judgment, especially when considered in connection with his declaration to C. E. Dabney, his counsel in the litigation resulting in the judgment, made several years after the judgment, viz., that the judgment was an unfounded and baseless claim, which it was needless to pay any further attention to. The evidence fairly justifies the inference that the enmity between the creditor, Life, and the debtor, James, was so bitter, especially on the part of James towards Life, that the hostile attitude of the latter drove the former to abandon his residence in the county of Pittsylvania during the pendency of the litigation between them, and to take up his abode in the county of Augusta, where he has since resided. It is not at all pretended that the judgment was paid by James to Life, respondents only saying they believed it had been paid; and it is proved that payment was never made to Life's counsel, residing in Pittsylvania county, who prosecuted the claim to judgment, and who was of counsel for Life in the institution of this suit to enforce its payment.

We do not think that it is in the slightest degree probable that James would have paid to Life, whom he regarded as a bitter enemy, a judgment which he (James) characterized as an unfounded and baseless claim, and we are of opinion that neither the lapse of time, the condition of the parties, the

circumstances surrounding them, nor their relations to each other, at all justify a presumption that the debt asserted has been paid; but that the circumstances surrounding the parties, and their relations to each other, strongly tend to establish the contrary.

For the foregoing reasons, the decree of the lower court is affirmed.

*Affirmed.*