# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## STEFFEY V. KING AND ANOTHER.

### September 17, 1919.

1. WILLS—*Jus Disponendi—Fee Simple—Case at Bar.*—A testator gave all his property, both real and personal, to his wife, providing that she should have "absolute control of all of the aforesaid property during the term of her natural life," and if at her death anything remained over and above her support, it was the testator's desire that his adopted daughter should have it.

   *Held:* That the testator intended to give his wife the absolute power of disposal during her lifetime, and therefore the remainder over was void.

2. WILLS—*Jus Disponendi—Fee Simple—Acts 1908, Ch. 146—Case at Bar.*—In the instant case the will took effect before the act of June 26, 1908 (Acts 1908, ch. 146), amending section 2418 of the Code of 1904, to give effect to the intention of the testator, was passed, and therefore the case was not governed by that enactment.

3. ESTOPPEL—*Acquiescence of Heirs at Law—Case at Bar.*—In the instant case the remainderman under a void remainder at the death of the life tenant entered into possession of the property. The heirs at law rested for more than ten years under a misapprehension as to the legal effect of the will and did not assert their title to the property. The sources of information as to the legal title were open alike and equally to the heirs at law and purchasers from the remainderman, and there was no evidence of any admission or conduct on the part of the heirs at law which could be said to have induced the purchasers to purchase the property.

   *Held:* That the heirs at law were not estopped by their conduct and long silence from asserting title to the land.

4. LIMITATIONS OF ACTIONS—*Tolling Statute—Code of 1904, Section 2919—Real Actions.*—The amendment to section 2919, Code of 1887 (Acts 1887-88, p. 345), providing that "the period of one year from the qualification of a personal representative" shall be excluded from the computation of time within which it might be necessary to commence any proceeding, and the amendment

by Acts of 1895-96, p. 331, which substituted "the period of one year from the death of any party" for "the period of one year from the qualification of a personal representative" (Code 1904, section 2919), do not apply to real actions.

5.  LIMITATIONS OF ACTIONS—*Tolling Statute—Section 2919, Code of 1904—Case at Bar.*—When the legislature by the act of 1895-96, p. 331, Code of 1904, section 2919, provided for the exclusion of "one year from the death of any party" in computing the time of the running of the statute of limitations, it meant some party having a right and cause of action.  This right must have existed or at least have been capable of coming into existence during the life of the party, therefore the statute has no application to the instant case, where the life tenant's possession was not questioned and could not have been questioned so long as she lived.  Therefore, when the remainderman under the void remainder took possession the statute began to run from the time of such taking of possession and not from one year after the death of the life tenant.

Appeal from a decree of the Circuit Court of Wythe county.  Decree for complainants.  Defendants appeal.

*Reversed and remanded.*

The opinion states the case.

*W. B. Kegley* and *W. S. Poage,* for the appellants.

*J. C. Shaffer,* for the appellees.

KELLY, J., delivered the opinion of the court.

In the year 1889, Thomas L. Kasey, being the owner of a house and lot and about eighteen acres of land, died and left a will which, so far as material to this controversy, was as follows:

"Secondly, it is my will and desire that my beloved wife, Sarah E. Kasey, have all of my property that I may be possessed of at the time of my death—both real estate and personal property.  The real estate consists of one house and
16

lot situated at Crocketts Depot and eighteen or twenty acres of land situated on the north side of the railroad *formerly* belonging to James E. Ward, but sold by decree of the Circuit Court of Wythe county, for which no deed has been made to me yet. In case of my death before the court makes me the deed, it is my desire that said court make deed for said eighteen or twenty acres to my beloved wife, Sarah E. Kasey.

"It is my will and desire that my wife, Sarah E. Kasey, have absolute control of all of the aforesaid property during the term of her natural life. If at my wife's death there remains anything over and above her support, it is my will and desire that Bessie H. Foster, a girl that I have raised, have all of the personal property and real estate to have and to hold forever."

Pursuant to the terms of the will, Mrs. Kasey at once took possession of all the real and personal property devised and bequeathed to her, and subsequently received a deed from a commissioner of the Circuit Court of Wythe county for the land as to which her husband had not perfected his title. She sold about six acres of this land prior to her death, but retained the house and residue of the land, about twelve acres, and the personal property until her death. Bessie H. Foster, mentioned in the will, was T. L. Kasey's niece, and after his death continued to make her home with Mrs. Kasey.

Upon the death of Mrs. Kasey, which occurred on the 24th day of January, 1907, Miss Foster took possession of the real and personal property remaining undisposed of, claiming and treating it as her own, and her right and title thereto was never questioned by anybody until this suit was brought in 1917. In January, 1908, she married John H. Riggle, and she and her husband decided to move to Tennessee. They advertised for sale and sold at public auc-

tion on February 22, 1908, the house and lot and twelve acres of land. The notice of this sale was widely circulated, the sale itself was largely attended, and the parties, or certainly most of them, who are now claiming adversely to the title acquired at that sale, knew all about it, and never once challenged its validity until they did so by the litigation in which this appeal was granted.

At the sale, J. A. B. Steffey bought the house and lot at the price of $1,000; Volney H. King, six acres of the land at the price of $885, and A. S. Dix the remaining six acres at the price of $885. Subsequently, King sold a portion of his six acres to L. B. Kesner. Possession was immediately taken, and all of the property thus sold has ever since been held by the purchasers in open, notorious, adverse and exclusive possession.

In May, 1917, more than ten years after the death of Mrs. Kasey, and, as appears from the facts already stated, more than ten years after Bessie Foster had entered into the possession, which has continued uninterruptedly ever since, S. R. King and others, the heirs at law of Mrs. Kasey, filed their bill in equity against the aforesaid purchasers and occupants of the real estate, claiming title thereto and praying the court to remove the cloud thereon, which they alleged existed by reason of the deed executed by Bessie Riggle and her husband. This claim on the part of the heirs of Mrs. Kasey is based upon the language of her husband's will, their contention being that under a proper construction thereof Mrs. Kasey took a fee simple title to the real estate, and that the remainder over to Bessie Foster was void for uncertainty.

The defendants to this bill, J. A. B. Steffey and others, relied upon three defenses: first, that the remainder over to Miss Foster was good; second, that the plaintiffs were estopped by their own acquiescence and conduct; and third,

that the suit was barred by the statute of limitations. A jury was waived, and all matters of law and fact were submitted to the circuit court, which found against the defendants upon all three of these grounds. In rejecting the plea of the statute of limitations, however, the court seems to have found as a fact, and the evidence conclusively shows, that the defendants and those under whom they claimed have been in open, notorious, adverse and exclusive possession of the real estate for more than ten years prior to the institution of the suit; and the plea of the statute of limitations was rejected on the ground that by virtue of the provisions of section 2919 of the Code "the period of one year from the death of Sarah E. Kasey should be excluded from the period of possession claimed and held by the defendant."

[1] It is assigned as error that the court erred in holding that Mrs. Kasey upon a proper construction of her husband's will took a fee simple title in the real estate.

We have no difficulty in disposing of this assignment. It cannot be sustained without overturning the rule generally designated as the doctrine of *May* v. *Joynes,* 20 Gratt. (61 Va.) 692. The many cases in which this court has approved that rule are collected by Judge Burks in a note to the opinion in *Conrad* v. *Conrad,* 123 Va. 711, 97 S. E. 337, and need not be cited here. Taking the language of the will as a whole, there is no escape from the conclusion that Mr. Kasey intended to give his wife the absolute power of disposal during her lifetime, and therefore under the decisions just mentioned the remainder over was void.

[2] It may be, as argued by counsel for the appellants, that the rule in question often operates to defeat the real intention of the testator. The legislature seems to have thought so when it passed the act effective June 26, 1908 (Acts 1908, c. 146), amending section 2418 of the Code.

The will in the instant case, however, took effect before that act was passed, and nothing remains for us to do with this branch of the case but to follow the rule which, as Judge Harrison said in *Farish* v. *Wayman,* 91 Va. 430, 21 S. E. 810, has become a canon of property.

[3]   Nor do we think that, as claimed by appellants, the circuit court committed any error in holding that the appellees were not estopped by their conduct and long silence from asserting title to the land.   The assertion of title by the heirs of Mrs. Kasey at this late day appears to have resulted from an accidental discovery of the misapprehension under which all parties concerned had evidently rested for more than ten years as to the true legal effect of the will; and the situation from the standpoint of the appellants appeals strongly to a sense of natural equity and justice. The facts, however, do not bring the appellants within the protection of the doctrine of equitable estoppel.  The sources of information as to the legal title were open alike and equally to both parties, and there is no evidence of any admission or conduct on the part of appellees which can be said to have induced appellants to purchase the property. 11 Am. & Eng. Enc. of Law, second edition, 433, 434; 2 Pom. Eq. Jur., second edition, sec. 806.

[4]   This brings us to the final question in the case, which is this: did the court err in holding that the period of one year from the death of Mrs. Kasey should be excluded in computing the time during which the statute of limitations had been running in favor of the defendants?

The ruling of the court on this question was based upon section 2919 of the Code.  That section as originally enacted was known as the "stay law," and in its original form, so far as material to this case, is as follows:

"The period between the seventeenth day of April, eighteen hundred and sixty-one, and the second day of March,

eighteen hundred and sixty-six, shall be excluded from the computation of the time within which by the terms or operation of any statute or rule of law it may be necessary to commence any action or other proceedings or to do any other act to preserve or prevent the loss of any civil right or remedy, or to avoid any fine, penalty or forfeiture; and the period within the second day of March, eighteen hundred and sixty-six, and the first day of January, eighteen hundred and sixty-nine, shall be excluded from the computation of time within which by the operation of any statute or rule of law it may be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy."

This section of the Code was amended in 1888 (Acts 1887-8, page 345 [Code 1904, p. 1539]), by inserting after the words "eighteen hundred and sixty-nine" the words, "and the period of one year from the qualification of a personal representative."

By the Acts 1895-6, page 331 (Code 1904, p. 1539), this section was again amended by substituting for the language last above quoted, the words, "and the period of one year from the death of any party."

The second amendment, being the one in force at the time this case was decided by the circuit court, was the basis of the decision, and constitutes the turning point before us.

In the case of *Virginia Mining & Improvement Co.* v. *Hoover*, 82 Va. 449, 4 S. E. 689, it was held that the original "stay law" applied to actions of ejectment; and in *Manuel's Adm'r* v. *N. & W. Ry. Co.*, 99 Va. 188, 37 S. E. 957, it was decided that the amendment here under consideration did not apply to the limitation fixed in the act creating a right of action for death by the wrongful act of another. There was plausible, if not convincing, reason for the decision in both of the cases cited. Independent of the terms of the

stay law itself and the kindred statutory provisions upon which the opinion in the *Hoover Case* seems to have rested, the reason for the stay of the statute from 1861 to 1866 would seem to apply no less to actions of ejectment than to those relating to personal or pecuniary causes. (See discussion of the purpose and scope of the stay law by Judge Staples in *Johnston* v. *Gill*, 27 Gratt. [68 Va.] 587) ; and the fact that the limitation involved in *Manuel's Case* was fixed by a statute creating both the right and the remedy and was not found in the general statutes of limitation furnishes entirely satisfactory ground for the decision in the latter case (2 Va. Law Reg. 386).

But can it be said that real actions are embraced within the reason and intent of the amendment in question? We think not. The first amendment under the act of 1888 excluding from the statutory period "one year from the qualification of a personal representative," must have been intended to apply only to personal actions. The language employed was inapt for any other purpose, and the amendment was doubtless intended to protect personal rights for and against the estate of deceased persons, giving the personal representative the benefit of the period of one year in acquainting himself with claims for and against the estate, and giving to creditors of the estate, with perhaps less reason but with just reciprocity, a corresponding extension of time.

Neither the amendment of 1888 nor that of 1896 was in any way influenced by the considerations underlying the original act, and if it be true, as we think it undoubtedly is, that the act of 1888 related only to personal actions, we are unable to perceive any good reason for holding that the legislature intended to extend or widen the scope of that act by the later amendment. We are of opinion that the purpose of the change was merely to fix a definite time, the date

of the death of the party instead of the less certain date of the appointment of his administrator, from which the excluded year is to be counted.

If we view them as applying only to personal actions, then there is no difficulty in explaining both amendments; but we can see no satisfactory explanation for giving an additional year in real actions. The impediments and obstructions which may be in the way of the assertion of personal claims for or against the estate of the decedent do not exist in regard to actions for real estate. There is no reason why the heir may not at once bring an action for real estate unless he is under disability, and in that event he is fully protected by other provisions of the general statute of limitations. To construe the statute in accordance with the contention of the appellees would be to establish a rule that whenever a person claiming title to real estate dies, the running of the statute shall be suspended for one year, thus extending the period of limitation from ten to eleven years, and this same suspension and extension would occur with every successive death of a claimant of the same title. The parties to ejectment suits are often numerous, and such a construction of the statute as is here contended for might frequently result in great inconvenience.

[5] There is another and perhaps a stronger ground upon which to hold that the amendment does not apply to the instant case, and this ground is equally good whether the amendment applies to real actions or not. When the legislature provided for the exclusion of "one year from the death of any party," it of course meant some party having a right and cause of action. This right must have existed or at least have been capable of coming into existence during the life of the party. Under the peculiar and unique facts of this case Mrs. Kasey was not such a person. Her possession and her right of control were not questioned or

invaded, and would not have been questioned or invaded so long as she lived. It is true that Miss Foster would have had as much legal right to dispossess Mrs. Kasey during her lifetime as she had to assume the possession after her death, but as a matter of fact she did not do so, and never would have done so. It is true also that the logical and necessary result of holding that Mrs. Kasey was not "such a party" as the statute contemplates would lead us to hold that if a stranger had stepped into the adverse possession immediately after her death, in that case, too, the one-year provision would not apply, even though it might have applied if such person had disturbed her possession before her death. This result would not be more unusual or extraordinary than the facts necessary to bring it about. Such a case as the one at bar has perhaps never before arisen, and such a case as we have supposed perhaps never will arise. The legislature knew when the amendment was passed that the causes of action in which the estates of deceased persons are likely to be concerned are almost always in existence at the time of the death of the party, and we are of opinion that it was such causes of action, and only such, which the statute embraced.

For the reasons indicated, we are of opinion that the court erred in rejecting the statute of limitations as a defense, and that upon the facts and the law the case is with the appellant. It appears from the record, however, and it was conceded in the argument, that certain of the appellees claiming small, undivided interests in the real estate herein involved have been protected against the running of the statute by the disability of infancy. The facilities of the lower court, by a reference or otherwise, for ascertaining exactly what these interests are will enable it to formulate a proper decree more readily than we can, and, therefore, instead of entering a final order here, the cause will be re-

versed and remanded to the lower court with instructions to enter a decree in favor of the appellant, except as to the appellees who are protected by their infancy against the running of the statute.

*Reversed and remanded.*