# Richmond.

## WILLIAMS' ADMINISTRATOR V. DEAN, ET ALS.

### December 17, 1925.

1. APPEAL AND ERROR—*Appeals to be Decided on their Merits—Petition Wholly Void.*—Whenever possible, appeals should be decided on their merits, but it is also true that this can be done only when two re- quirements are met. The petition for appeal must not be wholly void and it must be presented within the time prescribed by statute.

2. ACTIONS—*Appeal and Error—Parties—Death.*—Suits must be brought by persons who are alive, either in their own right or in some repre- sentative capacity. The same rule applies to an appeal, whether it be for writ of error or appeal proper. Any petition which does not comply with this elementary and universal rule is not merely defec- tive, it is void, and since it is void it is not possible to revive it; never having lived it can never be resurrected.

3. APPEAL AND ERROR—*Administrator—Adoption of Original Petition— Case at Bar.*—In the instant case, after final judgment and award of execution, and before a petition for a writ of error was presented, one of the parties defendant died. The original petition for a writ of error was signed by the deceased party "by counsel," and the writ promptly issued. Seven months after final judgment, decedent's administrator presented a petition praying to be substituted as petitioner in place of the deceased, which petition was granted.

   *Held:* That the writ of error should be dismissed as improvidently awarded. This supplemental petition was but a request that in a void proceeding one plaintiff might be substituted for another. The administrator might have adopted the original petition as his own and certainly there was no reason for recopying it, but when adopted it should have been presented as an original and not as one amended by the substitution of one plaintiff for another.

4. APPEAL AND ERROR—*Deceased Party—Appearance of Representative.*—No appeal can be taken at law or in equity in the name of a deceased party or privy to the record. Such an appeal is fatally defective and cannot be amended in the appellate court. A general appear- ance of the representative of the deceased or of the appellee will not cure the defect since the appeal is void and it will be dismissed on motion.

5. APPEAL AND ERROR—*Time of Filing Petition for Review—Case at Bar.*—

In the instant case, it was clear that the order charged to be erroneous was entered on October the 16th, 1923, and that the petition asking that it be reviewed was not presented until May 5, 1924—more than six months thereafter—and manifestly too late unless the time in which it could be presented was extended by the provisions of section 5809 of the Code of 1919.

6. APPEAL AND ERROR—*Limitation of Actions—Section 5809 of the Code of 1919—Application of Section to Appeals and Writs of Error.*—Section 5809 of the Code of 1919, providing that the period of one year from the death of any party shall be excluded from the computation of time within which, by the operation of any statute or rule of law, it may be necessary to commence any proceedings to preserve or prevent the loss of any right or remedy, has no application to appeals and writs of error.

7. STATUTES—*Construction—Amendments to Statutes Presumed to have been Passed with a View to Previous Judicial Construction.*—After the Stay law of 1866 had been construed as inapplicable to appeals and writs of error by the Supreme Court of Appeals, it is to be presumed that an amendment of the act was passed by the legislature with this construction before it.

8. APPEAL AND ERROR—*Limitation of Actions—Time in which Appeal Should be Taken.*—The entire subject of appeals and the time in which they may be taken is dealt with in the comprehensive act of December 31, 1903. The limitation there provided for is imperative and there is nothing to intimate that section 2919 of the Code of 1887 then in effect had any bearing on the subject.

9. LIMITATION OF ACTION—*Appeal and Error—Exemptions.*—The exemptions contained in a general statute of limitations governing the time for commencement of actions cannot be applied by construction to statutes governing appeals or writs of error.

10. STATUTES—*Construction—Construed as of the Time When Written.*—The construction which section 5809 of the Code of 1919 should receive today is that construction which was proper when it was first written. It has not been changed by the fact that some of the older provisions of the section into which it was originally incorporated have since been eliminated.

Error to a judgment of the Circuit Court of Buckingham county, in a proceeding by interpleader. Judgment for plaintiff. Defendant assigns error.

*Dismissed.*

The opinion states the case.

*Hubard & Boatwright* and *Walter Leake*, for the plaintiff in error.

*Claude R. Wood, John D. Easley* and *A. B. Dickenson*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

On May 7, 1921, Emily J. Williams, by a writing duly executed and acknowledged, leased to her son, Jesse Williams, for a term of ten years, a certain farm in Buckingham county containing 640 acres, with the mill thereon, known as the Diana Mills property. This lease was properly recorded on May 14, 1921. The consideration was that Jesse Williams should maintain, care for, and support his mother; should pay all taxes and public charges and keep the premises in good repair.

This mill was put out of commission by a flood and washout in the spring of 1922, and Jesse Williams, who was in bad health, found himself wholly unable to comply with his obligations contained in this contract. He abandoned the property, left the county and wrote to his mother surrendering every interest he had in the lease. Since that time he has asserted none and, save for his contingent interest as a possible heir, has no interest therein at all. Following this abandonment and surrender, Mrs. Williams turned it over to another son, William Williams, who, at considerable expense, reconditioned the mill and has operated it and the farm ever since.

On November 8, 1922, George A. Dean filed what is styled a petition of interpleader in the Circuit Court of Buckingham county. In it he states that on October 7, 1922, *a fieri facias*, at his instance, issued from the

clerk's office of said court against the goods and chattels of Jesse Williams for the sum of $2,000.00 with interest from October 13, 1922, and costs, and that said execution went into the hands of the sheriff and was levied by him on the unexpired term of the Jesse Williams lease, but that Emily J. Williams was asserting title thereto and claimed that the Jesse Williams lease had been forfeited and that he held no present interest thereunder.

Emily J. Williams and Jesse Williams were made parties defendant and required to appear at the first day of the December term of that court, and on December the 12th, to state the nature of their claim that their rights might be determined. Mrs. Williams did appear and filed her answer on December the 12th, 1922. Her defense was that the Dean judgment was not obtained until after the Jesse Williams lease had been forfeited; that Jesse Williams had no interest in the property and that it was in no wise subject to the lien of any judgment against him. For some reason the issue, thus made, was not tried until October 13, 1923, at which time the jury was impanelled and there was a verdict for the petitioner which was confirmed by the court. From it there was an appeal, writ of error and supersedeas. This, Dean has moved to dismiss as being improvidently awarded in that it was not granted within six months from the date of the judgment alleged to be erroneous, and is void upon its face.

In the beginning it is well that we ascertain definitely in what order petitioner claims error was committed and when that order was entered.

To the end that the situation as shown by the record may more fully appear, this excerpt therefrom is reproduced:

"page 10)    At a circuit court continued and held
            for Buckingham county, on Thursday,
            the 17th day of May, 1923:

"*George Dean* v. *Jesse Williams.*

"On the motion of the defendant, it is ordered that
the deposition of Emily J. Williams be taken and the
defendant is given until the first day of the next term
of this court in which to take and file the said deposi-
tion. And this case is continued until the next term
of this court.

"page 11)    At a circuit court held for Buckingham
             county, on Saturday, the 13th day of
             October, 1923:

"*George A. Dean* v. *Williams, Jesse.*

"Interpleader of Emily J. Williams as to Whether the
            Property of Diana Mills is her Property or of
            Jesse Williams.

"This day came the parties, plaintiff and defendant,
by their attorneys, and then came the jury, to-wit:
Fletcher Sudsbury, R. F. Fones, W. A. Lewellyn, H.
T. Pearson, W. J. Whitlow, C. E. Pearson, Leon W.
Jones, were sworn to try the issue joined, and having
fully heard the evidence and argument by counsel,
retired to their room to consider of their verdict, and
after some time returned into court with a verdict in
these words: 'We, the jury, on the issue joined under
the within petition, find that the unexpired term under
the lease mentioned in the within petition is the
property of the defendant, Jesse Williams.' Signed C.
E. Pearson, foreman. Therefore, it is considered by
the court that the lease in the petition mentioned is
the property of Jesse Williams. And this case is con-
tinued to a future day of this term.

"page 12)    Order December Term, 1923.

"*George A. Dean* v. *Jesse Williams and Emily J.
    Williams.*

## "ON AN INTERPLEADER.

"This cause came on this day to be again heard on the papers formerly read on the verdict of the jury heretofore rendered at this term of the court and on the judgment of the court heretofore rendered at this term of the court on said verdict, and was argued by counsel and thereupon it is adjudged and ordered by the court that the sheriff of this county do proceed forthwith to sell the unexpired term of the defendant, Jesse Williams, under the contract of lease mentioned and described in the proceedings bearing date May 7, 1921, and recorded in the clerk's office of this county in deed book 26, page 104, to satisfy the execution in favor of the said George A. Dean and against the said Jesse Williams mentioned in the proceedings in this cause and which was levied by said sheriff on said unexpired term; by which lease the said Emily J. Williams leased to the said Jesse Williams for a term of ten years from the 7th day of May, 1921, all that certain tract of land situated in Slate River district, in Buckingham county, Virginia, on the north west side of Slate river, known as the Diana Mills property, and on which said Emily J. Williams and Jesse Williams now reside, containing 640 acres, more or less, to be the same, and including the mill and other buildings and improvements thereon, except the residence, yard, garden, curtilage and necessary buildings adjacent to said residence which are reserved in said contract for and during the natural life of the said Emily J. Williams for her occupancy and use, but subject to the said rights of the said Emily J. Williams in the said residence, yard, garden, curtilage and necessary outbuildings so reserved for her life, the unexpired term therein of said Jesse Williams under said lease

shall be sold, along with the said unexpired term in the other leased premises. Said sale shall be at public auction, to the highest bidder, on the premises, and shall be after not less than thirty days advertisement of (page 13) the time, place and terms of sale by hand bills posted in the usual manner, and the terms of said sale shall be all cash.

"It is further adjudged and ordered that the said George A. Dean do recover of the defendants, Emily J. Williams and Jesse Williams, his costs by him in this behalf expended, for which let execution issue.

"And the said Emily J. Williams and Jesse Williams having indicated an intention to apply for an appeal from this order, the execution of this order is suspended for ninty days from this day upon the execution within ten days from this date, by the said Emily J. Williams and the said Jesse Williams, of a proper suspending bond before the clerk of this court, with security to be approved by said clerk in the penalty of $250.00, conditioned for the payment of all such damages as may accrue to any person by reason of the said suspension in case a supersedeas to this order should not be allowed, and further conditioned and payable as required by law."

It will be seen that there are two orders, one of which appears upon page 11 of the transcript and one on pages 12 and 13.

The petition for writ of error opens as follows: "Your petitioner, Emily J. Williams, respectively represents that she is aggrieved by a certain final judgment of the Circuit Court of Buckingham county entered in this cause at the October term, 1923" (trans. pp. 12-13). The order which appears upon pages 12-13 of the transcript record is the second order

and not the first order, the first being upon page 11. At the top of page 12 is written "Order December Term, 1923," which would indicate that the order following was entered at its December term. No definite date appears. The first order was at the October term of the Circuit Court of Buckingham county and bears date October 13th. About this there is no manner of doubt. The second order has in it this recitation: "This cause came on this day to be again heard on the papers formerly read and on the verdict of the jury heretofore rendered at this term of the court on said verdict." If this order was entered at the same term of the court that the order of October 13th was, then it was not entered at the December term, but at the October term, and its caption was in error. The bills of exception are dated November the 20th and the certificate of the clerk to the completeness of the record is dated November the 30th. In this record is copied the order whose caption is to the effect that it was entered at the December term.

In the petition for dismissal is copied a certificate from the clerk to the effect that it was in fact entered on October 16, 1923. It is there charged that so much of the transcript as indicates that it was entered in December was an error of the clerk not borne out by the record, and a *certiorari* is prayed for, if necessary, to establish that fact. The answer to the petition to dismiss does not deny this, but substantially conceded that statement to be in accord with the facts. There being no controversy as to this, we do not deem it necessary to bring up the record to establish that fact. So the case will be dealt with as if the second order was entered in October and not in December. This conclusion is in fact inevitable and accords with the statement in the original petition for appeal. That petition

signed by "Emily J. Williams, by counsel," was presented to Judge Sims on February 21, 1924, and in accordance with its prayer the writ promptly issued. Up to that time no note had been taken of the death of Mrs. Williams, who had, in fact, died in the preceding November.

In recognition of this status John B. Boatwright, who had qualified as administrator of Emily J. Williams, deceased, on May 5, 1924, filed the following "supplemental petition" as such administrator:

"To the Honorable Judges of the Supreme Court of Appeals of Virginia:

"Your petitioner, John B. Boatwright, respectfully represents that he was duly appointed and has qualified as administrator c. t. a. of Emily J. Williams, deceased, and prays to be substituted as petitioner in the place of Emily J. Williams, deceased, in the proceeding now pending in this court under the style of *Emily J. Williams* v. *George A. Dean, et al.*, and that the case may hereafter be proceeded in, in the name of *John B. Boatwright, administrator c. t. a. of Emily J. Williams, deceased* v. *George A. Dean, et al.*

"JOHN B. BOATWRIGHT,

"Administrator c. t. a. of Emily J. Williams, deceased.

"By his counsel."

[1] This supplemental petition is but a request that in a void proceeding one plaintiff be substituted for another.

It is undoubtedly true that, whenever possible, appeals should be decided on their merits and with this we are in cordial accord, but it is also true that this can be done only when two requirements are met. The petition for appeal must not be wholly void and

it must be presented within the time prescribed by statute. The law is so written.

[2] Suits must be brought by persons who are alive, either in their own right or in some representative capacity. The same rule applies to all appeals to this court whether it be for writ of error or appeal proper, and any petition which does not comply with this elementary and universal rule is not merely defective, it is void, and since it is void it is not possible to revive it; never having lived it can never be resurrected.

[3] We do not wish to be understood as saying that this administrator might not have adopted the original petition as his own, and certainly there was no reason for recopying it. But when adopted it should have been presented as an original and not as one amended by the substitution of one plaintiff for another.

[4] "No appeal can be taken at law or in equity in the name of a deceased party or privy to the record. Such an appeal is fatally defective and cannot be amended in the appellate court * * * * A general appearance of the representative of the deceased or of the appellee will not cure the defect since the appeal is void and it will be dismissed on motion." 2 Am. & Eng. Enc. Pl. & Prac. 196, quoted with approval in *Booth* v. *Dotson,* 93 Va. 233-236, 24 S. E. 935; *Jackson's Admr.* v. *Wickham,* 112 Va. 128, 70 S. E. 539; Burks Pl. & Prac. (2nd Ed.), 766; 2 Corpus Juris 1020; *Bruiletts Creek Coal Co.* v. *Pomatto,* 172 Ind. 288, 88 N. E. 606.

[5] From what has gone before, it is clear that the order charged to be erroneous was entered on October the 16th, 1923, and that the petition asking that it be reviewed was not presented until May the 5th, 1924— more than six months thereafter—and manifestly too late unless the time in which it could be done was

extended by the provisions of section 5809 of the Code of 1919.

[6] That section is: "The period of one year from the death of any party shall be excluded from the computation of time within which, by the operation of any statute or rule of law, it may be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy."

This statute, beyond question, is the physical *residuum* of the stay law enacted in 1866 (Acts 1865-66, c. 69). That it is its spiritual off-spring is more open to question. In consolidated form it appears in the Code of 1887 as section 2919. The period between the seventeenth day of April, eighteen hundred and sixty-one, and the second day of March, eighteen hundred and sixty-six, shall be excluded from the computation of the time within which by the terms or operation of any statute, or rule of law, it may be necessary to commence any action or other proceeding, or to do any other act to preserve or prevent the loss of any civil right or remedy, or to avoid any fine, penalty, or forfeiture; and the period between the second day of March, eighteen hundred and sixty-six, and the first day of January, eighteen hundred and sixty-nine, shall be excluded from the computation of time within which, by the operation of any statute or rule of law, it may be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy."

The limitations running through this series of statutes has nothing to do with that governing the time within which appeals can be taken.

*Ambrose Heirs* v. *Keller*, 22 Gratt. (63 Va.) 772, is an instructive case. There the petition was presented on August 10, 1871, and two years and fifty nine days after the last decree. Under the general statute the

time then allowed for appeals was two years. The court held the appeal to have been taken in time and said:

"But by the act of the 5th of November, 1870, Session Acts 1869-1870, chapter 399, pp. 553-4, passed within two years from the date of the decrees of January and June 1869, and amending the law limiting appeals to two years, it is enacted 'that the time from the 26th of January, eighteen hundred and seventy, to the passage of this act, shall be excluded from the computation of said period of two years.' "

That is to say, it held that the general statute limiting the time for appeals would have applied but for this express reservation, and there is now no such reservation.

In *Rogers* v. *Strother, et als.*, 27 Gratt. (68 Va.), 417, it was held:

"The 7th section of the act of March 2, 1866, known as the 'stay law,' and the acts amendatory thereof, do not apply to appeals, writs of error or supersedeas; and, therefore, an appeal from a final decree made on the 1st of November, 1867, cannot be allowed on the 12th of June, 1871." Section 1 of syllabus. See also *Pace* v. *Ficklin*, 76 Va. 292.

[7] After this statute had been construed in these cases the amendment of 1887-88 was passed (chapter 295), and passed, it is to be presumed, by the legislature with this construction before it. The unamended section as it appeared in the Code of 1887 declared that during two named periods it should not be necessary to do anything to preserve certain rights. To this, by way of amendment, in 1888 was added another: "The period of one year from the death of any party." With this single addition the statute stood as it was. Here are two periods of time exempted and the char-

acter of the exemption construed. It is not readily
to be assumed that when a third is added a different
rule of construction should obtain as to it. We are
known by the company we keep, and this added pro-
vision as to time exemption must be construed as
were the other time exemptions of the statute into
which it was embedded.

[8] The entire subject of appeals and the time in
which they might be taken is dealt with in the com-
prehensive act of December 31, 1903. The limitation
there provided for is imperative and there is nothing
to intimate that section 2919 of the Code then in
effect had any bearing on the subject.

[9] In Virginia the general doctrine prevails as
stated in 3 Corpus Juris, p. 1063: "But the examptions
contained in a general statute of limitations governing
the time for commencement of actions cannot be
applied by construction to statutes governing appeals
or writs of error." 1 Barton Ch. Pr. (2nd ed.), 139,
140. If section 5809 be applied to appeals, then it
would follow that the other party would have a year
from the death of one of them in addition to the six
months. So that in this case Dean would have had
the additional year, if he had desired to appeal, as
well as the personal representative of Mrs. Williams,
for section 5809 applies to claims against as well as
those in favor of a decedent's estate. Rather a *reductio
ad absurdum. Ropes* v. *Coldman,* 50 Fla. 601, 39 So.
16, 7 Ann Cas. 353. In *Poff* v. *Poff,* 128 Va. 82, 104
S. E. 719, after an appeal was allowed the appellant
died before he had given bond, but before the time
within which the bond should be given, under the
statute, had expired; it was held that, as a matter of
appellate procedure, the provision in the chapter
regulating appeals, that no bond should be required of a

personal representative applied to the case. A close reading of the case shows that the appeals statutes were considered as the only statutory law regulating such matters. It was never suggested by, and evidently never occurred to, either court or counsel that section 5809 applied to the case, although if it had it would have settled the question involved and rendered discussion useless.

Somewhat the same situation arose under the Code of 1849. Section 3830 in the limitation statute of our Code of 1919 had its counterpart in the Code of 1849. As to its effect, the court said, in *Farborough* v. *Deshazo*, 7 Gratt. (48 Va.), 374: "The proviso in the act for limitation of suits as to rights existing when the Code takes effect, contained in the 19th section, chapter 149, p. 594, is restricted to actions and rights barred by that chapter and does not extend to the law limiting and regulating appeals." See also *McGruder* v. *Lyons*, 7 Gratt. (48 Va.), 233. The language of our statute limiting the time for appeals is very peremptory— section 6337—"No petition shall be presented, etc." This character of exclusiveness appears further in section 6355, forbidding the clerk to issue process on *any record* if the six months has expired, excluding the time the record is in the hand of one of the judges. See also *Steffey* v. *King*, 126 Va. 120, 101 S. E. 62. These matters have been kept constantly apart. The limitations governing appeals are set out in chapter 267 of the Code entitled "Appeals, Writs of Error and Supersedeas;" while section 5809 has been carried forward and now appears in chapter 238 of the Code dealing with "Limitation of Suits."

Indeed we might as well hold that the statute relied upon gives an added year in which to present bills of exception, as to hold that it gives an additional year in which to apply for appeals.

[10] Of course the construction which this statute should receive today is that construction which was proper when it was first written.   It has not been changed by the fact that some of the older provisions of the section into which it was originally incorporated have since been eliminated.

For the foregoing reasons the writ of error heretofore granted in this case must be dismissed as having been improvidently awarded.

*Dismissed.*

CHRISTIAN, J., dissenting:

I find myself unable to concur in the opinion in this case.   After final judgment and award of execution, Mrs. Williams died, but before a petition for a writ of error was presented.   Seven months after final judgment, her administrator presented a petition for a writ of error which was granted, and the defendant in error has moved to dismiss the same, because the right was barred by section 6337, Virginia Code.   This is true, unless section 5809 of the Code applies to limitations upon petitions for appeals, writs of error or supersedeas.

Section 6336 confers jurisdiction upon the court to grant appeals and writs of error in the instances therein set forth, while sections 6337 and 6355 fix the limitation within which the petitions shall be presented and delivered in the clerk's office.

There was no such thing as a limitation of action or remedy at common law.   The right is wholly statutory.   The statutes fix the time within which bills of review may be filed or *appeals taken*, and if litigants permit this time to elapse without availing themselves of the remedies provided for their relief, they are without remedy.   *The case is not different from any other where*

*a remedy is barred by the statute of limitations. Johnson* v. *Merritt,* 125 Va. 162-188, 99 S. E. 785.

Statutes of limitation are deemed statutes of repose, and this conception of such statutes applies with peculiar force to limitations upon the right of appeal. In the construction of statutes, the courts have but one object, to which all rules of construction are subservient, and that is to ascertain the will of the legislature, the true intent and meaning of the statute, which is to be gathered by giving all the words used their plain meaning, and *construing all statutes, in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, *and make the body of the laws harmonious* and just in their operation. *Tyson* v. *Scott,* 116 Va. 243, 81 S. E. 57.

Considering all statutes of limitations as a whole *for the repose of society* with different periods of delay and laches applicable to bar the various rights and remedies, there are certain principles and general statutes that make this body of the law harmonious and just in their operation. One of those general principles is *that the statute does not begin to run* until some person exists capable of asserting the right or remedy. In *Steffey* v. *King,* 126 Va. 120, 101 S. E. 62, the court held that the statute did not begin to run until the death of Mrs. Kasey, and Miss Foster entered into possession of the land; that the adult heirs could have asserted their rights at that time, and the statute began to run against them, but not as to the infants who were protected against the running of the statute by their disability.

In *Pace* v. *Ficklin's Ex'x,* 76 Va. 292, it was held that the period between the death of the first and appointment of the second assignee in bankruptcy will be included in the two years (now six months)

allowed for appeal from a final decree. The statute does not begin to run until some person exists capable of suing; but having begun, is not stopped by death or other disability.

When the effect of the decision in the case of *Pace* v. *Ficklin, supra,* was realized, the legislature by amendments in 1888 and 1895-96 (chapter 292) to section 2919 of the Code of 1887, known as the "stay law," provided that as to all personal actions or proceedings, the death of the party in interest stopped the running of the limitation. Neither of the amendments was in any way influenced by considerations of the *original "stay law,"* but was an independent provision. *Steffey* v. *King,* 126 Va. 120, 127, 101 S. E. 62. Since the Code of 1919 has omitted every vestige of the "stay law" the former decisions construing section 2919, Code of 1887, have no bearing upon section 5809, Code of 1919, which stands as a general rule of law, and by its very *terms stops* the running of *any* statute of limitations, or rule of law, whereby the rights of a deceased person are barred until one year from the death of such person.

The history of section 5809, the general and all inclusive language used in the act, and the reason and purpose of all statutes of limitations, show without controversy that the legislature intended it to apply to appeals, writs of error, and all other statutes where any proceeding is necessary, to preserve or prevent the loss of any right or remedy of the deceased person.