# Richmond

LOUIS C. BARLEY, ET AL. v. JAMES M. DUNCAN, JR., ET ALS.

February 24, 1941.

Record No. 2305.

Present, Holt, Hudgins, Browning, Eggleston and Spratley, JJ.

*Richard R. Farr, Wilson M. Farr* and *Hardee Chambliss, Jr.,* for the appellants.

*Robinson Moncure, Thomas, Strauss & Backus, J. Randolph F. Davis, Howard W. Smith, Jr.,* and *Albert V. Bryan,* for the appellees.

HUDGINS, J., delivered the opinion of the court.

Harley P. Wilson was the assignee of several judgments obtained by other parties against James M. Duncan, Sr. Both the assignee creditor and the judgment debtor died. Another creditor instituted a general creditor's suit against the administrator and heirs at law of James M. Duncan, Sr. The executors of Harley P. Wilson filed a petition in the cause alleging that the judgments were unpaid and had been assigned to their decedent.

The cause was referred to a commissioner to make the usual inquiries. He reported that the several judgments assigned to petitioners were barred by the limitations prescribed in Code, section 6477. The executors of Harley P. Wilson excepted to the report on the ground that one year from the death of Harley P. Wilson and one year from the death of James M. Duncan, Sr., should be excluded in the computation of time. The trial court overruled the exceptions and decreed that the judgments were barred by the statute of limitations. From that decree this appeal was allowed.

The dominant question presented is whether the period of one year from the death of a party should be

excluded in computing the time within which a judgment may be enforced.

The limitation of time within which suits and personal actions may be brought, with the exceptions prolonging the time in certain instances, was codified by the Code revisors of 1849 in chapter 149 of the Code of 1849. The same revisors codified, in chapter 186, the acts prescribing the time in which executions, actions or *scire facias* could be issued or brought on judgments, with stated exceptions extending the time in certain cases. From the language used in the different chapters, it clearly appears that the Code revisors and the legislature intended, for the acts of limitation, with the exception, to apply, in one instance, to proceedings before judgment is obtained, and, in the other, to proceedings after the claim has been reduced to judgment. The same distinction, regarding time within which rights and remedies may be enforced before judgment and after judgment, was followed by the Code revisors of 1860, chs. 149, 186.

The emergency created by the War Between the States caused the legislature to adopt numerous "stay laws", prohibiting the enforcement of judgments and executions in certain cases, and extending the time in which any claim might be reduced to judgment and the time in which judgments might be enforced. One such measure was adopted March 14, 1862 (Acts 1861-2, p. 99), providing:

"Be it enacted by the general assembly, that the period between the seventeenth day of April Anno Domini one thousand eight hundred and sixty-one, and four months after the ratification of a treaty of peace between the Confederate States of America and the United States of America, shall be excluded from the computation of the time within which, by the terms or operation of any statute or rule of law, it may be necessary to do any act or to commence any action or other proceeding to preserve or to prevent the loss of any civil right or remedy."

This act was amended in 1863 (Acts 1863-4, p. 41)

and again in 1866 (Acts 1865-6, p. 183). These acts dealt with the time to be excluded from computation in stated limitations to "commence any action or other proceeding or to do any other act to preserve or to prevent the loss of any civil right or remedy." The Code revisors of 1887 codified this act in section 2919 with another act. The latter, as codified, read: " * * * and the period between the second day of March, eighteen hundred and sixty-six, and the first day of January, eighteen hundred and sixty-nine, shall be excluded from the computation of time within which, by the operation of any statute or rule of law, it may be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy."

This latter provision, which is not so broad in its terms as the first, was amended in 1888 (Acts 1888, p. 345) by adding one year from the qualification of a personal representative to the period of exclusion. The act of 1896 (Acts 1895-6, p. 331) changed the commencement of this extra year of exclusion from "the qualification of the personal representative" to "the death of a party." The former provision of Code, section 2919, was omitted by the Code revisors of 1919 so that at present the only provision of these acts remaining is found in section 5809 of the Code of 1919, reading as follows:

· "The period of one year from the death of any party shall be excluded from the computation of time within which, by the operation of any statute or rule of law, it may be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy."

The Code revisors of 1887, as other Code revisors had done, codified the provisions of the acts dealing with judgment liens and executions, and the time within which they might be enforced, under a separate chapter (ch. 174, Code of 1887). Sections 3577 and 3578 state the time within which an execution, *scire facias* or action may be issued or brought on a judgment, and the exceptions

extending the time in certain stated contingencies. Section 3577 of this Code contains an amendment adopted in 1870 extending the time within which writs of *fieri facias* might be issued.

Appellants contend that the exclusion of one year from the death of a party, provided in 5809, applies to the time within which an execution might be issued or a judgment enforced, as provided in section 6477, which was formerly section 3577 of the Code of 1887.

The same contention was made in *James* v. *Life*, 92 Va. 702, 24 S. E. 275; however, the court disposed of the issues in that case on other grounds and left the question now under consideration unanswered. Judge Buchanan, speaking for the court in *Fadeley* v. *Williams*, 96 Va. 397, 31 S. E. 515, said that, where the nominal plaintiff and the beneficial plaintiff, in an action in which a claim had been reduced to judgment, had both died before a *scire facias* was issued, only one year should be excluded. That case was finally decided on the distinction stated in section 3577 of the Code of 1887 between the time allowed for the issuance of a writ of *fieri facias* and the time allowed for issuing a writ of *scire facias*. However, some parts of the language used in the opinion indicate that the court at that time held the view that the provisions of section 2919 modified the provisions of section 3577.

Later, this question was fully discussed by Judge Kelly in *Steffey* v. *King*, 126 Va. 120, 101 S. E. 62. The pertinent part of the opinion is as follows:

"This brings us to the final question in the case, which is this: did the court err in holding that the period of one year from the death of Mrs. Kasey should be excluded in computing the time during which the statute of limitations had been running in favor of the defendants?

"The ruling of the court on this question was based upon section 2919 of the Code. That section as originally enacted was known as the 'stay law', and in its

original form, so far as material to this case, is as follows:

" 'The period between the seventeenth day of April, eighteen hundred and sixty-one, and the second day of March, eighteen hundred and sixty-six, shall be excluded from the computation of the time within which by the terms or operation of any statute or rule of law it may be necessary to commence any action or other proceedings or to do any other act to preserve or prevent the loss of any civil right or remedy, or to avoid any fine, penalty or forfeiture; and the period within the second day of March, eighteen hundred and sixty-six, and the first day of January, eighteen hundred and sixty-nine, shall be excluded from the computation of time within which by the operation of any statute or rule of law it may be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy.'

"This section of the Code was amended in 1888 (Acts 1887-8, p. 345 (Code 1904, p. 1539)), by inserting after the words 'eighteen hundred and sixty-nine' the words, 'and the period of one year from the qualification of a personal representative'.

"By the Acts 1895-6, page 331 (Code 1904, p. 1539), this section was again amended by substituting for the language last above quoted, the words, 'and the period of one year from the death of any party'.

"The second amendment, being the one in force at the time this case was decided by the circuit court, was the basis of the decision, and constitutes the turning point before us.

"In the case of *Virginia Mining & Improvement Co.* v. *Hoover,* 82 Va. 449, 4 S. E. 689, it was held that the original 'stay law' applied to actions of ejectment; and in *Manuel* v. *Norfolk & W. Ry. Co.,* 99 Va. 188, 37 S. E. 957, it was decided that the amendment here under consideration did not apply to the limitation fixed in the act creating a right of action for death by the wrongful act

of another. There was plausible, if not convincing, reason for the decision in both of the cases cited. Independent of the terms of the stay law itself and the kindred statutory provisions upon which the opinion in the *Hoover Case* seems to have rested, the reason for the stay of the statute from 1861 to 1866 would seem to apply no less to actions of ejectment than to those relating to personal or pecuniary causes (see discussion of the purpose and scope of the stay law by Judge Staples in *Johnston* v. *Gill,* 27 Gratt. (68 Va.) 587); and the fact that the limitation involved in *Manuel's Case* was fixed by a statute creating both the right and the remedy and was not found in the general statutes of limitation furnishes entirely satisfactory ground for the decision in the latter case (2 Va. Law Reg. 386).

"But can it be said that real actions are embraced within the reason and intent of the amendment in question? We think not. The first amendment under the act of 1888 excluding from the statutory period 'one year from the qualification of a personal representative', must have been intended to apply only to personal actions. The language employed was inapt for any other purpose, and the amendment was doubtless intended to protect personal rights for and against the estate of deceased persons, giving the personal representative the benefit of the period of one year in acquainting himself with claims for and against the estate, and giving to creditors of the estate, with perhaps less reason but with just reciprocity, a corresponding extension of time.

"Neither the amendment of 1888 nor that of 1896 was in any way influenced by the considerations underlying the original act, and if it be true, as we think it undoubtedly is, that the act of 1888 related only to personal actions, we are unable to perceive any good reason for holding that the legislature intended to extend or widen the scope of that act by the later amendment. We are of opinion that the purpose of the change was merely to fix a definite time, the date of the death of the party in-

stead of the less certain date of the appointment of his administrator, from which the excluded year is to be counted.

"If we view them as applying only to personal actions, then there is no difficulty in explaining both amendments; but we can see no satisfactory explanation for giving an additional year in real actions. The impediments and obstructions which may be in the way of the assertion of personal claims for or against the estate of the decedent do not exist in regard to actions for real estate. There is no reason why the heir may not at once bring an action for real estate unless he is under disability, and in that event he is fully protected by other provisions of the general statute of limitations. To construe the statute in accordance with the contention of the appellees would be to establish a rule that whenever a person claiming title to real estate dies, the running of the statute shall be suspended for one year, thus extending the period of limitation from ten to eleven years, and this same suspension and extension would occur with every successive death of a claimant of the same title. The parties to ejectment suits are often numerous, and such a construction of the statute as is here contended for might frequently result in great inconvenience."

This lengthy quotation from the opinion in the *Steffey Case* reveals that this court carefully considered and decided the question now in issue. The holding is not *obiter dicta,* as contended by appellants. This construction of the two statutes should be followed unless the conclusion is proved to be based upon unsound reasoning. ██ It is quite true, as stated by appellants, that a suit to subject real estate to the satisfaction of a judgment lien is not a real action within a strict definition of that term; however, the same reasons stated by Judge Kelly in the *Steffey Case,* in his discussion of this question, are present with equal force in a suit in equity in-

stituted by a judgment creditor to enforce his debt against the real estate of the judgment debtor.

It is conceded that the language of section 5809 is general, broad and contains no exceptions. If given a literal meaning, one year from the death of a party would be added to every period of limitation within which any proceeding may be brought, regardless of the nature of such proceeding or the court having jurisdiction of the subject matter.

It has been held that the provisions of the section do not apply to actions for wrongful death under Lord Campbell's act (*Manuel* v. *Norfolk & W. Ry. Co.*, 99 Va. 188, 37 S. E. 957; *Anderson* v. *Hygeia Hotel Co.*, 92 Va. 687, 24 S. E. 269). In *Williams' Adm'r* v. *Dean*, 144 Va. 831, 844, 131 S. E. 1, it was urged that the provisions of section 5809 modified the provisions of Code, section 6337, regarding the time given for appeals and writs of error to this court. Judge Holt, in rendering the decision, said: "The language of our statute limiting the time for appeals is very peremptory—section 6337—'No petition shall be presented, etc.' This charter of exclusiveness appears further in section 6355, forbidding the clerk to issue process on *any record* if the six months has expired, excluding the time the record is in the hand of one of the judges. See also, *Steffey* v. *King*, 126 Va. 120, 101 S. E. 62. These matters have been kept constantly apart. The limitations governing appeals are set out in chapter 267 of the Code entitled 'Appeals, Writs of Error and Supersedeas;' while section 5809 has been carried forward and now appears in chapter 238 of the Code dealing with 'Limitation of Suits'."

In *Branch* v. *Branch*, 172 Va. 413, 2 S. E. (2d) 327, a demurrer was sustained to a bill filed in a suit to impeach a will because the bill did not show on its face that suit was brought within the time stated in section 5259.

In each of the foregoing cases last cited, a distinction was made between a pure statute of limitation, which

must be specifically pleaded, and a special limitation prescribed by a statute creating a new right. Even so, the language used in the pertinent Code section is sufficiently broad to supersede this principle if such language were given its literal meaning, as appellants contend should be done.

The tendency of recent decisions of this court, certainly since the *Steffey Case,* is to restrict the exceptions to the operation of the statute of limitations to those found in the statute itself and cognate sections. See *Clark* v. *Nave's Creditors,* 116 Va. 838, 83 S. E. 547; *Seal* v. *Puckett,* 159 Va. 297, 165 S. E. 496; and *Harper* v. *Harper,* 159 Va. 210, 165 S. E. 490.

The other three assignments of error have been carefully considered by the court, but they do not contain sufficient merit to be worthy of discussion.

For the reasons stated, the decree of the trial court is

*Affirmed.*