COURT OF APPEALS OF VIRGINIA


Present:    Judges Haley, Petty and Powell
Argued at Salem, Virginia


SHAUN WALLACE SCOTT
                                                    OPINION BY
v.       Record No. 2289-09-3              JUDGE WILLIAM G. PETTY
                                                  MARCH 29, 2011
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SALEM
Clifford R. Weckstein, Judge

Robert Michael Doherty (Charles L. Downs; WootenHart, on briefs),
for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Appellant, Shaun Wallace Scott, was charged with first-degree murder, malicious

wounding, attempted malicious wounding, three counts of felony hit-and-run, and felony

property damage under Code § 18.2-137(B).  After a bench trial, he was convicted of involuntary

manslaughter, felony property damage, and one count of felony hit-and-run.  On appeal, Scott

challenges his convictions, arguing that the trial court erred because it (1) had insufficient

evidence to convict him of involuntary manslaughter and felony hit-and-run; (2) imposed an

excessive sentence upon him for involuntary manslaughter; and (3) concluded that criminally

negligent conduct was sufficient to convict him of felony property damage under Code

§ 18.2-137(B).[1]

_____

    [1] We have condensed and re-ordered Scott's assignments of error so that we may more
efficiently address them in this appeal.

We conclude Scott waived his right to appeal the sufficiency of the evidence supporting his convictions for involuntary manslaughter and felony hit-and-run by failing to raise these issues at trial. Further, Scott's sentence for involuntary manslaughter was not excessive. However, the trial court erred as a matter of law when it concluded that criminally negligent conduct was sufficient to convict Scott of felony property damage under Code § 18.2-137(B). Accordingly, we affirm the involuntary manslaughter and felony hit-and-run convictions, as well as the involuntary manslaughter sentence. However, we reverse the conviction for felony property damage, and we remand for re-sentencing on the lesser-included offense set forth in Code § 18.2-137(A).

I. BACKGROUND

The relevant events leading to Scott's charges occurred late at night at a bar in Salem. Scott spent his evening at the bar, consuming four or five alcoholic drinks. Zane Blankenship and his brother also spent their evening at the bar drinking along with some other friends. At about 1:30 a.m., the bar announced "last call" and began herding customers outside. Witnessing a large crowd gathering outside the bar, a police officer parked his patrol car in a parking lot adjacent to the bar, leaving his headlights on to illuminate the area. Meanwhile, Scott left the bar and crossed the parking lot, headed toward his car. As he did so, Blankenship and several friends approached Scott. Apparently having some issue with Scott, Blankenship aggressively pushed Scott several times. Immediately thereafter, Scott got into his SUV, which was parked nearby, and recklessly drove out of the parking lot at a high speed[2] without his headlights on. His driving was so reckless that he almost lost control of his SUV. As he sped out of the lot, he struck and killed Blankenship, causing Blankenship to roll over the hood of Scott's SUV and shatter the windshield. According to the Commonwealth's evidence, Scott also sideswiped

_____

[2] One witness estimated Scott was driving 40 miles per hour.

- 2 -

Blankenship's brother, injuring his arm, and nearly struck Blankenship's friend, Eric Hughes. Despite striking Blankenship, Scott continued to speed out of the parking lot and hit the police car. In an attempt to readjust the path of his SUV after hitting the police car, Scott hit a parked SUV owned by Scott Guilliams. The value of the damage to Guilliams' SUV exceeded $1,000.

Scott was indicted for first-degree murder, malicious wounding, and attempted malicious wounding. He was also indicted for felony property damage under Code § 18.2-137(B) for the damage to Guilliams' SUV. Finally, he was indicted for three counts of felony hit-and-run.[3] At trial, the Commonwealth presented several witnesses and other evidence in support of its theory that Scott, at least indirectly through his other friends at the bar, had a dispute with Blankenship that started in the bar and escalated in the parking lot. According to the Commonwealth's theory, once Blankenship repeatedly pushed Scott in the parking lot, Scott threatened to get a gun and kill Blankenship, his brother, and his friends. The Commonwealth presented evidence that Scott blurted out "watch this" to some bystanders after making this threat. Thus, the Commonwealth proposed that Scott's comment indicated he wished to carry out his threat to kill Blankenship and his friends, and he immediately did so by driving his car at high speed toward Blankenship.

In contrast, Scott's defense rested on the proposition that he had no dispute with Blankenship or his friends and had no desire to fight or injure them. Instead, Scott claimed Blankenship wished to instigate a fight with him. This began in the parking lot when Blankenship repeatedly pushed him. According to Scott and other witnesses, after an aggressive push by Blankenship, Scott held out his hands with his palms out to indicate to Blankenship that he did not want to fight. Instead of saying "watch this" after Blankenship pushed him, Scott

---

[3] The Commonwealth later moved to *nolle prosequi* two of the indictments for felony hit-and-run.

testified that he probably said, "F--- this," indicating his frustration with Blankenship's bullying and, thus, simply indicating his desire to get away. Scott testified that while Blankenship pushed him, Scott heard someone say, "Gun." Hearing this, Scott feared for his safety. According to him, this fear caused him to frantically flee from the parking lot in his SUV. Scott admitted that he drove too fast and that he almost lost complete control of his SUV. However, he also testified that the police car's headlights blinded him as he drove out of the parking lot. Thus, Scott explained that, although he may have recklessly driven his car, he did so only to get away from the danger he perceived—not to harm anyone. In that frantic rush to flee, he testified he was unable to see that he was about to strike Blankenship. He also testified that he did not see the police car until he actually struck it. Just like the Commonwealth, Scott introduced a significant amount of testimony and other evidence to support his theory of the case.

Scott twice made a motion to strike the evidence, first after the close of the Commonwealth's evidence, and again after the close of all the evidence. During his first motion, Scott asked the trial court to strike the charge of felony property damage, arguing that the Commonwealth's evidence failed to show "an intent to damage [Guilliams'] vehicle."[4] He renewed this request in his second motion, further arguing that there was "no evidence that there was any intent [to damage] Mr. Guilliams' vehicle. It was clearly an accident." Scott also argued the evidence was insufficient to support the charges of murder, malicious wounding, and attempted malicious wounding. Notably, Scott's trial counsel said, "[A]t this point[,] we would

---

[4] In an attempt to explain Code § 18.2-137(B) to the trial court, Scott's counsel said in his first motion that the section "requires unlawful, felonious, and intentionally [sic]. That's not the disjunctive. That's the conjunctive. It requires all three." This incorrect and imprecise explanation does not do justice to the statutory scheme, as we explain in further detail below. Compare Code § 18.2-137(B) (making it a Class 1 misdemeanor or Class 6 felony for "any person [to] intentionally cause[]" damage to another's property, depending on the extent of the damage), with Code § 18.2-137(A) (making it a Class 3 misdemeanor to "unlawfully" damage another's property).

move to strike and argue that at most, the evidence supports involuntary manslaughter, [because there is] no evidence of a willful, deliberate, intentional act . . . ." She concluded by explaining, "He fled way too fast under the circumstances and at most at this juncture, it is involuntary manslaughter." Scott never argued the evidence was insufficient to support felony hit-and-run during either motion to strike, nor was the charge ever mentioned in either motion.

The trial court denied each motion to strike. Following the motion to strike at the conclusion of all the evidence, the trial court said, "The defendant makes an interesting and one might think apparently valid argument with regard to the intentional property damage, except for the fact that the Court of Appeals of Virginia . . . has said that even criminal negligence is sufficient to support a conviction under the statute." The trial court then proceeded to closing arguments, and again Scott argued he lacked the intent necessary to commit murder, malicious wounding, or attempted malicious wounding, explaining to the court that this was "an involuntary manslaughter case." He also argued that he lacked the intent necessary to commit felony property damage, and he again made no argument regarding felony hit-and-run.

The trial court, sitting in place of a jury, found Scott guilty of involuntary manslaughter, felony property damage under Code § 18.2-137(B), and one count of felony hit-and-run. It acquitted him of malicious wounding and attempted malicious wounding. In rendering its judgment, the court explained that it had carefully considered the evidence, and concluded by saying:

> The testimony about what Mr. Scott was doing is, with the exception of one witness, entirely consistent in that from the moment he began backing [up his SUV] through the moment he left the parking lot, he was going as fast as he could and had to back off slightly to avoid losing control when he went around the turn of the building. At 15 miles an hour, he covered 22 feet every second. At 25 miles an hour, 36 2/3rds feet. . . . I have doubt based on reason and the evidence that Mr. Scott intended to maim, disfigure, disable, or kill the two persons whom he is charged with maliciously wounding or attempting to maliciously wound. There

- 5 -

is, from the evidence of a number of witnesses including one of those victims, reason to question whether the defendant could possibly have seen them. The intent, the specific intent to maim, disfigure, disable, or kill is an element of the offense of malicious or unlawful wounding. I will find the defendant not guilty of those charges.

. . . I am not satisfied beyond a reasonable doubt of the necessary intent to commit murder. I am satisfied beyond a reasonable doubt that the killing was the result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life and without discussing it, that the elements of involuntary manslaughter have been proven beyond a reasonable doubt.

Along with the sentences imposed for felony hit-and-run and felony property damage, the trial court sentenced Scott to ten years for involuntary manslaughter, with five years suspended. This appeal followed.

## II. ANALYSIS

### A. Hit-and-run and Involuntary Manslaughter Sufficiency

Scott argues the evidence was insufficient to support his convictions for involuntary manslaughter and felony hit-and-run. Because Scott never made these arguments at trial, we conclude that he has waived his right to challenge these convictions on appeal.

Under Rule 5A:18,[5] "No ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling . . . ." This rule "'require[s] that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.'" Bazemore v. Commonwealth, 42 Va. App. 203, 218, 590

---

[5] Effective July 1, 2010, Rule 5A:18 was revised to state that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling . . . ." Because the proceedings below were completed prior to this revision taking effect, we will rely on the language of Rule 5A:18 that was then in effect. See Fails v. Va. State Bar, 265 Va. 3, 5 n.1, 574 S.E.2d 530, 531 n.1 (2003) (applying the Rule of Court in effect at the time of the proceedings below).

S.E.2d 602, 609 (2004) (en banc) (quoting Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989)).  In order to preserve the question of sufficiency of the evidence in a bench trial, a defendant must present an appropriate argument in "'a motion to strike at the conclusion of all the evidence, present an appropriate argument in summation, or make a motion to set aside the verdict.'"  Delaney v. Commonwealth, 55 Va. App. 64, 66, 683 S.E.2d 834, 835 (2009) (quoting Howard v. Commonwealth, 21 Va. App. 473, 478, 465 S.E.2d 142, 144 (1995)).

Here, Scott asks us to hold that the trial court erred when it ruled the evidence was sufficient to support convictions for involuntary manslaughter and felony hit-and-run.  To do that, we must first conclude Scott asked the trial court to strike those charges.  He did no such thing.  He certainly asked the trial court to strike the first-degree murder charge when his counsel said, "[A]t this point[,] we would move to strike and argue that at most, the evidence supports involuntary manslaughter, [because there is] no evidence of a willful, deliberate, intentional act."  However, this motion does not also function as a motion to strike the involuntary manslaughter charge.  It says nothing regarding the sufficiency of the evidence to support that crime, which does not require "a willful, deliberate, intentional act," unlike first-degree murder.  Compare Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001) (describing first-degree murder as a "willful, deliberate, and premeditated" killing), with Noakes v. Commonwealth, 280 Va. 338, 345, 699 S.E.2d 284, 288 (2010) (describing involuntary manslaughter as an accidental killing occurring as the result "'of some unlawful, but not felonious, act'" or "'the improper performance of a lawful act'" (quoting Mundy v. Commonwealth, 144 Va. 609, 615, 131 S.E. 242, 244 (1926))).  Rather, by making the motion, at best Scott's counsel merely asked the trial court to strike all of the homicide crimes *except* involuntary manslaughter.  This became crystal

clear when counsel concluded his second motion by saying, "[A]t most at this juncture, it is involuntary manslaughter."[6]

Accordingly, Scott's second motion to strike never argued to the trial court the issue Scott now wishes us to decide in this appeal. Scott also never argued that the evidence was insufficient to support felony hit-and-run. In fact, we can find no place where Scott mentioned the phrase "hit-and-run" anywhere in his two motions to strike or in his closing argument, or where he otherwise made any reference to this crime.[7] A strained reading of his argument below will not suffice—Scott must have specifically challenged the sufficiency of the evidence to support felony hit-and-run, which he did not do.[8] Thus, we hold that Scott did not properly object to the sufficiency of the evidence to support involuntary manslaughter or felony hit-and-run. Because he failed to properly object, he waived his right to challenge the

---

[6] The Commonwealth claims Scott's trial counsel admitted his guilt when she characterized her client's actions as best fitting involuntary manslaughter. The Commonwealth would therefore have us hold that Scott may not challenge his conviction on appeal when he urged the trial court to find him guilty of the offense. In reply, Scott argues he never admitted he was guilty of any crime. Rather, he argued "that the Commonwealth has not proven the necessary intent to prove murder or even voluntary manslaughter." We agree with Scott that he did not admit his guilt, but it does not follow that he preserved a sufficiency challenge to involuntary manslaughter. To do that, he needed to specifically attack the sufficiency of the evidence to support involuntary manslaughter, which he did not do.

[7] Before this Court, Scott argues the trial court erred for two reasons. First, he argues that Code § 46.2-894 makes a person's failure to stop at the scene of an accident criminal only when the person knows that the accident has resulted in the injury or death of another or has resulted in property damage. Second, he argues that an exception in Code § 46.2-894 shields him from criminal liability because he claims to have sustained injuries in the accident that prevented his compliance. These arguments were never made to the trial court, and therefore we do not reach their merits on appeal. See Rule 5A:18.

[8] At oral argument before this Court, Scott claimed he "implicitly" argued the evidence was insufficient to support a conviction of felony hit-and-run based on the totality of his closing argument that emphasized his lack of intent. In making that argument, Scott virtually concedes that he failed to make the appropriate argument with the sufficient specificity required by Rule 5A:18. See Bazemore, 42 Va. App. at 218, 590 S.E.2d at 609.

sufficiency of the evidence to support the convictions for these crimes on appeal. Therefore, we affirm his convictions for these crimes.

## B. Involuntary Manslaughter Sentence

Scott also argues the trial court imposed an excessive sentence upon him when it sentenced him to ten years for involuntary manslaughter, with five years suspended. This argument is without merit.

We review the trial court's sentence for abuse of discretion. Valentine v. Commonwealth, 18 Va. App. 334, 339, 443 S.E.2d 445, 448 (1994). Given this deferential standard of review, we will not interfere with the sentence so long as it "'was within the range set by the legislature'" for the particular crime of which the defendant was convicted. Jett v. Commonwealth, 34 Va. App. 252, 256, 540 S.E.2d 511, 513 (2001) (quoting Hudson v. Commonwealth, 10 Va. App. 158, 160-61, 390 S.E.2d 509, 510 (1990)); see also Valentine, 18 Va. App. at 339, 443 S.E.2d at 448 (holding that if the sentence does not exceed the maximum set by the legislature, "the sentence will not be overturned as being an abuse of discretion" (quoting Abdo v. Commonwealth, 218 Va. 473, 479, 237 S.E.2d 900, 903 (1977))). Involuntary manslaughter is a Class 5 felony, Code § 18.2-36, punishable by imprisonment for one to ten years, Code § 18.2-10(e). Here, Scott was sentenced to ten years imprisonment, which falls within the statutory range set by the legislature. Thus, no abuse of discretion occurred, and we therefore affirm the sentence.

## C. Property Damage Under Code § 18.2-137(B)

Scott finally assigns error to his conviction for felony property damage under Code § 18.2-137(B). He argues the trial court erred as a matter of law when it applied our decision in Crowder v. Commonwealth, 16 Va. App. 382, 429 S.E.2d 893, aff'd en banc, 17 Va. App. 202, 436 S.E.2d 192 (1993), to convict him on the basis that "even criminal negligence is sufficient to

support a conviction under the statute." Scott further argues the evidence was insufficient to support a conviction under the statute as properly understood. In contrast, the Commonwealth argues that Code § 18.2-137(B) punishes a volitional act performed by a person that causes damage to the property of another, without regard to whether the person specifically intends to damage the property by that act. We agree with Scott that the trial court erred as a matter of law when it interpreted Code § 18.2-137(B). Accordingly, we reverse Scott's conviction under that section. Because the trial court found as a matter of fact that Scott's behavior was criminally negligent, we remand for re-sentencing on the lesser-included offense set forth in Code § 18.2-137(A).

The Commonwealth claims on appeal, as it did below, that our decision in <u>Crowder</u> controls this case. Based on this argument, the trial court relied on <u>Crowder</u> and rejected Scott's argument. The trial court reasoned that "the Court of Appeals of Virginia . . . has said that even criminal negligence is sufficient to support a conviction under the statute." In 1993, we held in <u>Crowder</u> that Code § 18.2-137, as it was then written, made it a crime for a person to damage the property of another by a criminally negligent act. <u>Crowder</u>, 16 Va. App. at 384-85, 429 S.E.2d at 894. At that time, Code § 18.2-137 merely provided that "if any person *unlawfully* destroys, defaces [or] damages . . . any property, real or personal, not his own, . . . he shall be guilty of" a Class 1 misdemeanor if the damage is less than $1,000, or a Class 6 felony if the damage exceeds $1,000. Code § 18.2-137 (Supp. 1993) (emphasis added); <u>see also</u> <u>Crowder</u>, 16 Va. App. at 385, 429 S.E.2d at 894 (addressing only the misdemeanor charge). However, in 1999, the General Assembly amended Code § 18.2-137, such that it now reads:

> A. If any person *unlawfully* destroys, defaces, [or] damages . . .
> any property, real or personal, not his own, . . . he shall be guilty of
> a Class 3 misdemeanor . . . .
>
> B. If any person *intentionally* causes such injury, he shall be guilty
> of (i) a Class 1 misdemeanor if the value of or damage to the

> property . . . is less than $ 1,000 or (ii) a Class 6 felony if the value
> of or damage to the property . . . is $ 1,000 or more.

(Emphasis added). Obviously, Code § 18.2-137 has changed significantly since we decided

Crowder in 1993. Thus, the Commonwealth's insistence that Crowder is dispositive of the issue

before us is misguided. Crowder interpreted Code § 18.2-137 as it existed in 1993, not as it now

exists after the 1999 amendment that substantially altered it. Because of that substantial

alteration, we must interpret the statute anew.

"'[A]n issue of statutory interpretation is a pure question of law which we review de

novo.'" Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010) (alteration in original)

(quoting Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174,

178 (2007)).

> "When the language of a statute is unambiguous, we are bound by
> the plain meaning of that language. Furthermore, we must give
> effect to the legislature's intention as expressed by the language
> used unless a literal interpretation of the language would result in a
> manifest absurdity. If a statute is subject to more than one
> interpretation, we must apply the interpretation that will carry out
> the legislative intent behind the statute."

Id. (quoting Conyers, 273 Va. at 104, 639 S.E.2d at 178). Accordingly, "'[t]he plain, obvious,

and rational meaning of a statute is to be preferred over any curious, narrow, or strained

construction.'" Id. (alteration in original) (quoting Commonwealth v. Zamani, 256 Va. 391, 395,

507 S.E.2d 608, 609 (1998)).

We must also note that when the legislature amends a particular statute, we normally

presume that "'a change in law was intended.'" Wisniewski v. Johnson, 223 Va. 141, 144, 286

S.E.2d 223, 225 (1982) (quoting Boyd v. Commonwealth, 216 Va. 16, 20, 215 S.E.2d 915, 918

(1975)). "'[W]here the General Assembly acts in an area in which this Court has already spoken,

it is presumed to know the law as the Court has stated it and to acquiesce therein.'" Bell v.

Commonwealth, 21 Va. App. 693, 699, 467 S.E.2d 289, 292 (1996) (quoting Fortune v.

Commonwealth, 12 Va. App. 643, 650, 406 S.E.2d 47, 50 (1991)); see also Powers v. Cnty. Sch. Bd., 148 Va. 661, 669, 139 S.E. 262, 264 (1927) (stating that we presume the legislature acts "'with full knowledge of the law as it stands bearing upon the subject with which it proposes to deal'" (quoting Sch. Bd. v. Patterson, 111 Va. 482, 488, 69 S.E. 337, 339 (1910))).  Thus, when the legislature amends a statute following a court decision construing the statute, we presume the legislature amended the statute with that decision in mind.  Williams Adm'r v. Dean, 144 Va. 831, 842-43, 131 S.E. 1, 4 (1927); see Bell, 21 Va. App. at 693, 467 S.E.2d at 292; Powers, 148 Va. at 669, 139 S.E. at 264.

When we consider these canons of statutory construction, we conclude that Code § 18.2-137(B) attaches criminal liability when a person performs a volitional act that damages the property of another *and* the person specifically intends to cause damage to the property by that act.  Contrary to the Commonwealth's argument, Code § 18.2-137(B) does not criminalize the mere performance of a volitional act conducted in a criminally negligent manner that happens to damage the property of another.  A plain reading of the statute, with due consideration to the words used and their context in the overall statutory scheme, assures us that the legislature intended this reading when it amended Code § 18.2-137 in 1999.

We begin our analysis with the first part of Code § 18.2-137.  We first note that Code § 18.2-137(A) retains the pre-amendment *mens rea* language of the statute, attaching criminal liability when a person "unlawfully" damages the property of another.  As we explained in Crowder, an "unlawful" act includes the volitional performance of "a lawful act in a criminally negligent manner."  Crowder, 16 Va. App. at 385, 429 S.E.2d at 894 (citing several cases).  Unlike the pre-amendment language, Code § 18.2-137(A) does not punish the act more severely based on the extent of the damage.  Instead, Code § 18.2-137(A) simply makes unlawful

property damage a Class 3 misdemeanor, which is punishable by "a fine of not more than $500." Code § 18.2-11(c).

In contrast, Code § 18.2-137(B) retains different levels of punishment based on the extent of the damage caused to the property, just as the pre-amendment statute did. Further, unlike Code § 18.2-137(A) and the pre-amendment statute, Code § 18.2-137(B) makes it criminal for a person to "intentionally cause [the] injury" described in Code § 18.2-137(A). For that "intentional[]" damage, Code § 18.2-137(B) makes the person guilty of a Class 1 misdemeanor if the damage is less than $1,000, or makes the person guilty of a Class 6 felony if the damage is $1,000 or more. Thus, a person who intentionally damages the property of another is subject to much stiffer penalties than a person who merely unlawfully damages the property of another. See Code § 18.2-11(a) (making a Class 1 misdemeanor punishable by "confinement in jail for not more than twelve months and a fine of not more than $2,500, either or both"); Code § 18.2-10(f) (making a Class 6 felony punishable by imprisonment up to five years).

In light of this scheme, it is apparent to us that Code § 18.2-137 distinguishes criminal liability based on the *mens rea* accompanying the proscribed act. In contrast to this plain reading of the statute, the Commonwealth would have us read the statute so that criminally negligent conduct falls under Code § 18.2-137(B), even though that subsection uses the word "intentionally."[9] This reading is problematic for two reasons.

---

[9] The Commonwealth vaguely asserts in its brief that Code § 18.2-137(B) "merely provides an enhanced punishment." At oral argument, the Commonwealth explained that it viewed the statute as giving a trial court the discretion to impose only a fine under Code § 18.2-137(A) when a person has exceedingly minor criminal culpability even though the *mens rea* required under both subsections is purportedly the same. However, the legislature certainly knows how to make a law giving trial courts such discretion if it wants to. See, e.g., Code § 46.2-869 (providing that "upon the trial of any person charged with reckless driving *where the degree of culpability is slight*, the court in its discretion may find the accused not guilty of reckless driving but guilty of improper driving," which is a mere traffic infraction punishable by

First, by reading the statute in this manner, the Commonwealth renders Code

§ 18.2-137(A) meaningless. The word "unlawfully" must mean something different than the

word "intentionally." Because Code § 18.2-137(A) punishes a person less severely for

"unlawfully" damaging the property of another, as opposed to "intentionally" damaging the

property of another as proscribed by Code § 18.2-137(B), it follows that the word "unlawfully"

must connote a less culpable mental state than the word "intentionally." In general, the lowest

level of *mens rea* is criminal negligence. See Lewis v. Commonwealth, 211 Va. 684, 687, 179

S.E.2d 506, 509 (1971) (explaining that generally the line between criminal and civil liability is

drawn between criminal negligence and simple negligence); Zirkle v. Commonwealth, 189 Va.

862, 868, 55 S.E.2d 24, 28 (1949) (explaining that criminal negligence must be proved in a

criminal proceeding, not some lesser standard that may be appropriate in a civil proceeding);

Tubman v. Commonwealth, 3 Va. App. 267, 274, 348 S.E.2d 871, 875 (1992) (explaining that a

negligent act done without recklessness gives rise to only civil liability, but a reckless, or

criminally negligent, act crosses the line into criminal liability). Thus, the Commonwealth

implausibly reads Code § 18.2-137(B) to punish the lowest *mens rea* with relatively high

penalties. However, if Code § 18.2-137(B) punishes the lowest level of *mens rea* required for

criminal liability, there is no lesser *mens rea* to which Code § 18.2-137(A) can apply. Therefore,

the Commonwealth's reading of Code § 18.2-137(B) renders Code § 18.2-137(A) meaningless.

Second, the Commonwealth's reading ignores our traditional understanding of the word

"unlawfully" and the conduct usually proscribed by that word. "Unlawfully" was the only *mens*

*rea* term in the pre-amendment version of Code § 18.2-137. As we explained in Crowder, by

using the word "unlawfully," the pre-amendment statute attached criminal liability "when

---

a fine (emphasis added)). We conclude the legislature did not intend to make such a law here.
Compare Code § 46.2-869 (using specific language to give discretion to the trial court to give a
reduced punishment for slight culpability), with Code § 18.2-137 (using no such language).

property is damaged or destroyed during the commission of an unlawful act, which includes the performance of a lawful act *in a criminally negligent manner*." Crowder, 16 Va. App. at 385, 429 S.E.2d at 894 (emphasis added) (citing several cases). Other cases have similarly construed this term to include criminally negligent conduct. See, e.g., Brown v. Commonwealth, 278 Va. 523, 528, 685 S.E.2d 43, 45-46 (2009) (defining an unlawful act as one "demonstrating criminal negligence"); Gooden v. Commonwealth, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984) (explaining that involuntary manslaughter requires the performance of an unlawful act, which includes a criminally negligent act). We see no reason to depart from the traditional understanding of the word "unlawfully" in this case. Thus, since "unlawfully" applies to criminally negligent conduct and since the legislature evidently intended its use of the word "intentionally" in Code § 18.2-137(B) to connote a higher level of *mens rea* than that covered by "unlawfully" in Code § 18.2-137(A), we reject the Commonwealth's interpretation of Code § 18.2-137(B) as applying to criminally negligent conduct.

For these reasons, we cannot adopt the Commonwealth's strained interpretation of Code § 18.2-137. In essence, the Commonwealth would have us give no effect to the legislature's significant amendment to Code § 18.2-137. Instead, it would have us continue to apply the statute as if it has not changed since 1993. However, as we have shown, the legislature's significant changes to Code § 18.2-137 have created a new statutory scheme that punishes a person differently based on the *mens rea* accompanying his act. Code § 18.2-137(B) attaches criminal liability when a person performs a volitional act that damages the property of another *and* the person specifically intends to cause damage to the property by that act. Code § 18.2-137(B) does not cover criminally negligent conduct—instead, such conduct falls under Code § 18.2-137(A). Thus, the trial court erred as a matter of law when it interpreted Code § 18.2-137(B) as covering criminally negligent conduct.

As the trial court explained, it viewed Scott's actions as unintentional.[10]  This is why the trial court acquitted Scott of malicious wounding, attempted malicious wounding, and murder.  Those crimes all share one thing in common—they require the specific intent to kill or to cause serious bodily injury, which the trial court was unable to find beyond a reasonable doubt.  Nonetheless, the trial court concluded as a matter of fact that Scott's reckless driving amounted to "negligence so gross, wanton, and culpable as to show a reckless disregard of human life," i.e., that it was criminally negligent.[11]  See Noakes, 280 Va. at 346, 699 S.E.2d at 288-89 (describing the performance of a lawful act in a manner that is "'so gross and culpable as to indicate a callous disregard of human life'" as criminally negligent (quoting Beck v. Commonwealth, 216 Va. 1, 4, 216 S.E.2d 8, 10 (1975))).  Thus, the trial court found Scott guilty of involuntary manslaughter because his criminally negligent conduct resulted in the death of Blankenship.  Because that conduct also resulted in the damage to Guilliams' SUV, Scott still is criminally liable under Code § 18.2-137(A).  Therefore, we remand to the trial court for re-sentencing under Code § 18.2-137(A).[12]

---

[10] Because of this finding, we leave for another day the question of whether an unintended consequence can be so probable and foreseeable as to be deemed intentional under the statute.

[11] "'We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence.'"  McGhee v. Commonwealth, 280 Va. 620, 623, 701 S.E.2d 58, 59 (2010) (quoting Whitehead v. Commonwealth, 278 Va. 300, 306-07, 683 S.E.2d 299, 301 (2009)).  Here, the trial court was not plainly wrong when it found that Scott's behavior was criminally negligent, and so that finding binds us on appeal.

[12] At oral argument, Scott consented to have the case remanded for re-sentencing for the lesser-included offense set forth in Code § 18.2-137(A).  Because the evidence and the trial court's factual finding confirm Scott's guilt under Code § 18.2-137(A), and because Scott has consented to this relief, we remand the case for re-sentencing under Code § 18.2-137(A).  See Britt v. Commonwealth, 276 Va. 569, 576, 667 S.E.2d 763, 766-67 (2008).

## III. CONCLUSION

For the foregoing reasons, we conclude that Scott waived his right to appeal the sufficiency of the evidence to support his convictions for involuntary manslaughter and felony hit-and-run. We also conclude the trial court did not abuse its discretion when it sentenced him to a term of imprisonment for involuntary manslaughter that was within the range set by the legislature. Finally, we conclude that the trial court erred as a matter of law when it incorrectly interpreted and applied Code § 18.2-137(B) and found Scott guilty under the statute. Therefore, we affirm Scott's convictions for involuntary manslaughter and felony hit-and-run, as well as Scott's sentence for involuntary manslaughter, but we reverse his conviction for felony property damage under Code § 18.2-137(B). Because Scott's actions make him criminally liable under Code § 18.2-137(A), we remand for re-sentencing under that subsection.

Affirmed in part,
reversed in part,
and remanded.