COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judges Kelsey and Huff
Argued at Chesapeake, Virginia


JONTREIL LAMAR BAKER

                                                                    OPINION BY
v.        Record No. 0162-11-1                              JUDGE GLEN A. HUFF
                                                               NOVEMBER 29, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
E. Preston Grissom, Judge Designate

James L. Grandfield, Public Defender (Office of the Public
Defender, on brief), for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Jontreil Lamar Baker ("appellant") was convicted in a bench trial in the Circuit Court of

the City of Suffolk ("trial court") of three counts of possession of a firearm by a felon, in

violation of Code § 18.2-308.2.[1]  Although appellant's counsel conceded at trial that appellant

possessed the firearm on three separate occasions, appellant contends on appeal that the trial

court erred in convicting him of three separate counts of possession of a firearm by a convicted

felon, instead of a single count.  For the following reasons, we affirm.

I.  BACKGROUND

On appeal, "'we consider the evidence and all reasonable inferences flowing from that

evidence in the light most favorable to the Commonwealth, the prevailing party at trial.'"

---

[1] Appellant was also convicted of statutory burglary, in violation of Code §§ 18.2-90 and 18.2-91, grand larceny of a firearm, in violation of Code § 18.2-95, and conspiracy to commit statutory burglary and/or grand larceny of a firearm, in violation of Code § 18.2-22.  On appeal, appellant only challenges the convictions of three counts of possession of a firearm by a convicted felon.

Williams v. Commonwealth, 49 Va. App. 439, 442, 642 S.E.2d 295, 296 (2007) (en banc) (quoting Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004)). So viewed, the evidence is as follows.

Appellant concedes on brief that the evidence was sufficient to show that he broke and entered the residence of Charna Chapman ("Chapman"), that he took the firearm, that he conspired with another to take the firearm, and that he possessed the firearm from April 9, 2010, until he sold it on April 23, 2010. He also concedes that at all times relevant to this appeal, he was a convicted felon.

On April 8, 2010, appellant and Calvin Williams ("Williams") visited Chapman and her roommate Tamesha Gholston ("Gholston") at Chapman's home in the City of Suffolk. During the visit, Chapman showed appellant and Williams the .380 Highpoint firearm that she owned. Appellant offered to buy the firearm from her, but Chapman declined to sell it to him. The next day, Gholston received a call from appellant asking her where she was. Gholston replied that she and Chapman had just arrived in Newport News, and appellant quickly ended the conversation. When Chapman and Gholston returned home, they found that it had been broken into and that the .380 Highpoint firearm had been stolen. Chapman reported the break-in and theft to the police, and she provided the firearm's serial number to the police.

At the same time that Chapman and Gholston were going to Newport News, Williams gave appellant a ride to an area located one block away from Chapman's residence. While driving to Chapman's neighborhood, appellant informed Williams that he intended to take Chapman's gun. Before appellant got out of the car, he called Gholston, and asked her where she and Chapman were at that time. Fifteen minutes after dropping him off, Williams picked appellant up from the same location pursuant to appellant's direction, and appellant showed Williams Chapman's gun.

On April 20, 2010, appellant called Marvin McKinney ("McKinney") on the telephone, and asked McKinney if he could get any "shells" for a .380 firearm. McKinney replied that he could get appellant the shells. After the telephone conversation ended, McKinney told Suffolk police officers about the conversation.

On April 22, 2010, McKinney was shopping at a store in Suffolk when he ran into appellant and appellant's uncle in the parking lot. Appellant was in his uncle's truck when he showed McKinney the .380, informed McKinney that the gun was for sale, and asked McKinney if he wanted to buy it. McKinney replied that he did, but asked if appellant would be willing to hold it for him. After the conversation concluded with appellant, McKinney met with Detective William Shockley of the Suffolk Police Department. While he was with Detective Shockley, McKinney called appellant and made arrangements to purchase the firearm on April 23, 2010, for $225.

On April 23, 2010, McKinney met with Detective Shockley and Detective Joseph Antinarelli, also with the Suffolk Police Department, to complete the preparations for the controlled firearm purchase. The detectives gave McKinney the $225, which had already been photographed with the serial numbers recorded, and provided him with audio and visual recorders. The detectives searched McKinney to verify that he did not have any other firearms, narcotics, or money on him, and then they drove McKinney to the location where the firearm purchase was to take place. They watched him walk to the location, saw two people approach him, and witnessed the sale of the firearm.

Appellant and LaDonte Myrick ("Myrick") were the two individuals that the detectives saw approach McKinney. McKinney handed the $225 to appellant, after which Myrick handed the firearm to McKinney. Once the sale was concluded, the detectives immediately searched McKinney, found none of the money on him, and retrieved the firearm that McKinney had just

purchased. The detectives verified that the serial number on the gun matched the serial number of Chapman's stolen gun.

Detective Neil Boone, of the Suffolk Police Department, arrested appellant later in the evening on April 23, 2010. When appellant was arrested, he had possession of some of the same currency that had been recorded for the controlled firearm purchase, which was turned over to Detective Antinarelli. Detective Antinarelli verified that five of the bills discovered on appellant had been given to McKinney for the controlled purchase of the firearm.

At trial, appellant's counsel conceded that appellant possessed the firearm on three separate occasions. When the trial court asked appellant's counsel "are they not three distinct occasions?," appellant's counsel replied "[t]he occasions are separate, yes, sir."

This appeal followed.

## II. STANDARD OF REVIEW

"'[A]n issue of statutory interpretation is a pure question of law which we review de novo.'" Scott v. Commonwealth, 58 Va. App. 35, 48, 707 S.E.2d 17, 24 (2011) (quoting Evans v. Evans, 280 Va. 76, 82, 695 S.E.2d 173, 176 (2010)).

## III. ANALYSIS

On appeal, appellant alleges the trial court erred in convicting him of three separate counts of possession of a firearm by a convicted felon instead of a single count because his possession was one continuous possession.[2] Specifically, he contends that he cannot be

---

[2] Appellant frames his argument on appeal as a challenge to the trial court's denial of his motion to strike all but one of the charges as multiplicitous. He does not challenge his convictions based upon the double jeopardy prohibition of "multiple punishments" for the same offense, and thus we do not address this question. In addition, the Commonwealth has not raised on appeal, and thus we do not address, the question of whether Code § 19.2-266.2 applies to Baker's argument. See Williams v. Commonwealth, 57 Va. App. 750, 768 n.4, 706 S.E.2d 530, 539 n.4 (2011) (applying Code § 19.2-266.2 to motions to dismiss on "multiple punishment" double jeopardy grounds).

convicted of three separate counts of possession of a firearm under Code § 18.2-308.2 in that the statute should be interpreted as proscribing the "possession of the gun," which can constitute one continuous possession, and not the "unit of prosecution" theory set forth in this Court's unpublished opinion in Brown v. Commonwealth, No. 1438-00-1, 2001 Va. App. LEXIS 336 (Va. Ct. App. June 12, 2001).

> "When the language of a statute is unambiguous, we are bound by the plain meaning of that language. Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute."

Scott, 58 Va. App. at 48-49, 707 S.E.2d at 24 (quoting Evans, 280 Va. at 82, 695 S.E.2d at 176). "Accordingly, '[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'" Id. at 49, 707 S.E.2d at 24 (quoting Evans, 280 Va. at 82, 695 S.E.2d at 176).

Code § 18.2-308.2 provides in pertinent part,

> A. It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm or ammunition for a firearm, . . . . Any person who violates this section shall be guilty of a Class 6 felony . . . . Any person who violates this section by knowingly and intentionally possessing or transporting any firearm and who was previously convicted of any other felony within the prior 10 years shall be sentenced to a mandatory minimum term of imprisonment of two years.

"[T]he conduct proscribed by Code § 18.2-308.2, being a felon in possession of a firearm, focuses on the General Assembly's determination that certain individuals – felons – are unfit to possess firearms, even for lawful purposes." Armstrong v. Commonwealth, 263 Va. 573, 583, 562 S.E.2d 139, 144 (2002). In Acey v. Commonwealth, 29 Va. App. 240, 250, 511 S.E.2d 429,

433-34 (1999), this Court held that the "gravamen of the offense" in Code § 18.2-308.2 is "the possession of a firearm by a felon."

In Brown, an unpublished case similar to this one, this Court addressed the issue of whether a defendant could be found guilty of two counts of possession of a firearm under Code § 18.2-308.2 when he possessed the *same* firearm on two separate occasions. 2001 Va. App. LEXIS 336, at *8.[3] Based on the reasoning in Acey – that the "gravamen of the offense" is the actual possession – we held "the unit of prosecution for this offense becomes the number of occasions on which a defendant 'possesses' one or more weapons." Id. at *9. We then concluded that because the evidence established that Brown had exercised dominion and control over the same firearm on two separate occasions, he had "committed two distinct violations of a single criminal proscription." Id. at *9-10.

We find the reasoning in Brown persuasive, and hold that "the number of occasions" appropriately delineates the unit of prosecution constituting one offense of "possession" under Code § 18.2-308.2.[4] 2001 Va. App. LEXIS 336, at *9; see Shears v. Commonwealth, 23 Va. App. 394, 401, 477 S.E.2d 309, 312 (1996) ("The gravamen of the offense is clearly

---

[3] The Commonwealth contends that the General Assembly acquiesced to this Court's interpretation of Code § 18.2-308.2 in Brown because it amended the statute in 2004, 2005, and 2007, but it did not abrogate the Brown holding. "When the General Assembly acts in an area in which one of its appellate courts already has spoken, it is presumed to know the law as the court has stated it and to acquiesce therein, and if the legislature intends to countermand such appellate decision it must do so explicitly." Weathers v. Commonwealth, 262 Va. 803, 805, 553 S.E.2d 729, 730 (2001). While the General Assembly amended the statute subsequent to our unpublished decision in Brown, we decline to apply the presumption to an unpublished opinion in light of the fact that unpublished opinions are merely persuasive authority and not binding precedent.

[4] We note that there is a division among courts in addressing possession of a firearm, and whether the appropriate unit of prosecution is a single continuous act or separate proven occasions of possession. See generally Double Jeopardy: Various Acts of Weapons Violations As Separate or Continuing Offense, 80 A.L.R. 4th 631 (2011). As noted above, this Court follows, as this Court did in the unpublished case of Brown, 2001 Va. App. LEXIS 336, at *9,

possession of the specified drug with the requisite intent.  Thus, each distinguishable incident of the offending conduct constitutes a 'unit of prosecution' for violation of the statute.").

Contrary to appellant's assertion, the word "occasion," as employed in this context, refers to a discrete unit of time, and not to an open-ended, perpetual, and ongoing period.  Webster's Dictionary defines "occasion" as "a particular occurrence," or "a particular time at which something takes place."  Webster's Third New International Dictionary 1560 (1993).  Both definitions specifically indicate that an occasion takes place at a "*particular* occurrence" or a "*particular* time."  Id. (emphasis added).  Thus, we hold the use of the term "occasion" to determine the statutory proscription of a convicted felon's possession of a firearm delineates a distinct unit of time – a specific unit of prosecution.

In turning to the facts of this case, the evidence established, and appellant conceded at trial, that appellant exercised dominion and control over the firearm on three separate occasions – each a distinguishable incident of the proscribed conduct.  Accordingly, the evidence established that appellant committed three distinct violations of possession of a firearm in violation of Code § 18.2-308.2.  Thus, we hold that the trial court did not err in convicting appellant of three counts of possession of a firearm, and affirm the trial court's judgment.

Affirmed.

---

the separate occasion of possession analysis based on the "gravamen of the offense."  Acey, 29 Va. App. at 250, 511 S.E.2d at 433-34.