PRESENT: All the Justices

JONTREIL LAMAR BAKER

OPINION BY
v.  Record No. 120252       JUSTICE LEROY F. MILLETTE, JR.
                            November 1, 2012
COMMONWEALTH OF VIRGINIA


FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether evidence of the possession of one firearm on three separate occasions can constitute three separate charges for possession of a firearm by a convicted felon in violation of Code § 18.2-308.2(A).

I.   Background

Jontreil Lamar Baker, a convicted felon, and Calvin Williams visited Charna Chapman in the home that she shared with a roommate in Suffolk.  During their visit, Chapman showed Baker her Hi-Point Firearms .380 caliber pistol.  Baker offered to purchase the firearm, but Chapman refused to sell.

The next day, Chapman and her roommate returned home to find that the door they had locked just hours before was now easily pushed open.  The home had been burglarized and Chapman's firearm was missing.  While they were away, Baker had entered the home through a window, taken the firearm, and left out of the front door.  When Williams picked him up a block away from the home just minutes after the burglary, Baker displayed the firearm as he entered the car.

Several weeks later, Baker showed Marvin Donnell McKinney a Hi-Point .380 caliber pistol, which he offered to sell. After noting his interest, McKinney contacted Detective William N. Shockley of the City of Suffolk Police Department to inform him of the offer. Detective Shockley and McKinney organized a "controlled purchase" of the firearm to occur the following day. Detective Shockley observed McKinney meet with Baker and receive a Hi-Point .380 caliber pistol in exchange for $225. The firearm was later confirmed to be Chapman's missing firearm.

Baker was arrested and tried in the Circuit Court of the City of Suffolk. He was convicted of three counts of possession of a firearm by a convicted felon in violation of Code § 18.2-308.2(A).[*] Baker sought review in the Court of Appeals, where he argued that the trial court erred in convicting him of three counts of possession of a firearm by a convicted felon because he should have been convicted of only one continuous possession.

The Court of Appeals disagreed with Baker, holding that " 'the number of occasions' appropriately delineates the unit

---

[*] Baker was also convicted of statutory burglary in violation of Code §§ 18.2-90 and 18.2-91, grand larceny of a firearm in violation of Code § 18.2-95, and conspiracy to commit statutory burglary and/or grand larceny of a firearm in violation of Code § 18.2-22. On appeal, Baker does not challenge these three convictions.

of prosecution constituting one offense of 'possession' under Code § 18.2-308.2." Baker v. Commonwealth, 59 Va. App. 146, 153, 717 S.E.2d 442, 445 (2011) (quoting Brown v. Commonwealth, Record No. 1438-00-1 (June 12, 2001)). The Court of Appeals upheld all three possession convictions, holding that an "occasion" is defined as a "particular occurrence" or a "particular time," and that each of the convictions was based on "distinguishable incidents." Id. at 152-54, 717 S.E.2d at 445-46.

## II.  Analysis

Baker contends that the Court of Appeals erred in affirming his three convictions for possession of a firearm by a convicted felon under Code § 18.2-308.2(A) because the conduct charged should have constituted one continuous possession. He claims that the use of the concept of separate "occasions" as the relevant unit of prosecution fails to describe what length or duration of possession is sufficient to constitute a separate offense. Baker argues that under this ambiguous standard, a felon who comes into possession of a firearm, takes it home, and places it in a safe for a year could be convicted of 365 separate violations of Code § 18.2-308.2(A).

According to the Commonwealth, each separate and distinct occasion would constitute a separate possession under Code

§ 18.2-308.2(A), thereby justifying three separate convictions of Baker under the statute. In response to Baker's contention that such a finding could lead to 365 convictions for a year of continuous possession of a firearm in a locked safe, the Commonwealth points out that such a situation could not occur because separate and distinct occasions of possession must be proven by the Commonwealth for each individual conviction. The Commonwealth contends that if a firearm remained untouched in a safe for 365 days, nothing separate or distinct would occur to establish a new occasion under the statute. Nor would there be evidence to prove possession on each of the 365 days of that year. We agree with the Commonwealth that the three convictions should be affirmed as each is a separate and distinct act or occurrence of possession, however, we reject as unclear the term "unit of prosecution" previously employed by the Court of Appeals.

In this issue of statutory construction, we conduct a de novo review. Kozmina v. Commonwealth, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011). Code § 18.2-308.2(A) provides, in pertinent part, "[i]t shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm . . . or to knowingly and intentionally carry about his person, hidden from common observation, any weapon described in subsection A of

4

§ 18.2-308."  In interpreting this statute, "courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result." Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006).  A statute is considered ambiguous "if the text can be understood in more than one way or refers to two or more things simultaneously or when the language is difficult to comprehend, is of doubtful import, or lacks clearness or definiteness." Id. at 227 n.8, 623 S.E.2d at 926 n.8 (citations, internal quotation marks, and alteration omitted).  This statute, Code § 18.2-308.2(A), lacks definition and is therefore ambiguous as to whether possession of a single firearm on different dates or at different times constitutes one continuous offense or multiple offenses.

Since we find the statute ambiguous as to when one offense ends and the next begins, we join the Court of Appeals of Virginia and the appellate courts of many other jurisdictions in using the gravamen of the offense to determine the legislature's intent.  See, e.g., Acey v. Commonwealth, 29 Va. App. 240, 249-50, 511 S.E.2d 429, 433-34 (1999) (finding simultaneous possession of multiple firearms does not justify multiple convictions for possession because the possession of a firearm by a felon is, of itself, the dangerousness that is the gravamen of the offense of possession); United States v. Evans,

5

854 F.2d 56, 60 (5th Cir. 1988) (determining that the making of a false statement, not the acquisition of the firearm, was the gravamen of the offense of the crime of furnishing false identification made in connection with the purchase of firearms and ammunition); Bautista v. State, 863 So. 2d 1180, 1186-87 (Fla. 2003) (finding the gravamen of the offense of DUI manslaughter to be the killing of a human being rather than a traffic violation).

In creating this statutory offense, the General Assembly recognized that each act of possessing the firearm places the public in a heightened level of danger that does not coincide with the defendant's initial receipt of the firearm. This is evidenced by the language of Code § 18.2-308.2(A), which, along with possession of a firearm, includes specific prohibitions against the distinct acts of transporting a firearm and "carry[ing] about [the felon's] person, hidden from common observation, any weapon" named in the statute. We have held that "every part of a statute is presumed to have some effect and no part will be considered meaningless unless absolutely necessary." Hubbard v. Henrico Ltd. P'ship, 255 Va. 335, 340, 497 S.E.2d 335, 338 (1998). We therefore find that the inclusion of these specific references expresses the General Assembly's intent that separate instances of possession, and therefore of heightened danger to the community, be punished

6

separately. If the statute was meant to restrict the offense only to the receipt, initial possession, or even extended possession of the weapon, such a specific reference to the transporting or carrying of that weapon would be a frivolous and unnecessary addition to the statutory language. The implicit danger in each separate instance of possession was also noted by the Court in Armstrong v. Commonwealth, 263 Va. 573, 582-83, 562 S.E.2d 139, 144 (2002), where we found a felon "unfit to possess firearms," making each possession of a firearm by a felon, whether for a lawful or unlawful purpose, the conduct the General Assembly intended to curtail.

The General Assembly's goal in punishing a convicted felon for possessing or transporting a firearm is therefore not limited to preventing a felon's receipt or initial possession of a firearm, but extends to the prevention of the heightened danger each new instance of possession creates. In light of the legislative intent behind this provision, each separate incident of possession of a firearm by a convicted felon proven by the Commonwealth establishes a new offense because each incident is sufficient to create a new danger to members of the community exposed to the armed felon.

This is a position similar to those taken by other jurisdictions with regards to the distinction between separate offenses of possession, and it is consistent with the harm that

7

the General Assembly intended to address with this statute. See United States v. Jones, 841 F.2d 1022, 1024 (10th Cir. 1988) (finding no division between unlawful receipt and unlawful possession of a firearm because no new date or specific act or transaction was proven by the government); Melton v. State, 842 A.2d 743, 757 (Md. 2004) (holding that only a single conviction was justified when the defendant committed only one act of possession but was a member of more than one of the nine listed classes prohibited from possessing the firearm); State v. Johnson, No. 52370-8-I, 2004 Wash. App. LEXIS 1132, at *8-11 (Wash. Ct. App. June 1, 2004) (unpublished) (explaining that "any firearm" in the possession statute indicated an intention that each "separate instance of unlawful possession . . . constitute a violation").

In accordance with the gravamen of the offense, we hold that a new offense of possession can be established with each separate act or occurrence that can be proven by the government. Under this analysis, each of the three convictions under Code § 18.2-308.2(A) derive from distinct offenses. The first conviction was based on the possession of the firearm the day it was stolen, supported by evidence of the burglary and Williams' testimony that the firearm was displayed to him by Baker on the same day. The second conviction was based on the possession of the same firearm several weeks later, supported

8

by evidence of Baker's attempt to sell the firearm to McKinney. The final conviction was for the possession, display, and sale of the firearm by Baker the following day, which was observed by Detective Shockley and testified to by the recipient of the firearm. These incidents constitute distinct acts or occurrences, each reflecting an enhanced danger to the public, and convictions for the three separate charges on the facts of this case are therefore valid under Code § 18.2-308.2(A).

### III. Conclusion

For the foregoing reasons, we hold that the Court of Appeals did not err in affirming the three convictions under Code § 18.2-308.2(A) for separate acts or occurrences as proven by the Commonwealth. We will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>

JUSTICE POWELL, dissenting.

In my opinion, the majority fails to apply a crucial rule of statutory construction applicable to unit of prosecution cases such as this one. In so doing, the majority ignores the necessary application of the rule of lenity requiring that we construe an ambiguous statute in a criminal defendant's favor. Therefore, I must respectfully dissent.

As the majority correctly notes, Code § 18.2-308.2(A) is ambiguous as to what the proper unit of prosecution is under

9

the statute. Code § 18.2-308.2(A) does not indicate unambiguously whether the General Assembly intended to create a separate offense for each "occasion" on which a felon possesses a firearm during a certain period of time. To resolve the ambiguity, we must look to the General Assembly's intent in enacting the statute.

In attempting to ascertain the General Assembly's intent, the majority is correct that we must look to the gravamen of the offense. However, we must also be mindful of the fact that "[w]hen a penal statute is unclear, the statute must be strictly construed against the Commonwealth and in favor of an accused's liberty, and the accused is entitled to the benefit of <u>any reasonable doubt concerning the statute's construction</u>." <u>Waldrop v. Commonwealth</u>, 255 Va. 210, 214, 495 S.E.2d 822, 825 (1998) (emphasis added). Indeed, we have previously recognized that, before the accused can be punished, "'his case must be plainly and unmistakably within the statute.'" <u>Harward v. Commonwealth</u>, 229 Va. 363, 365, 330 S.E.2d 89, 90 (1985) (quoting <u>United States v. Lacher</u>, 134 U.S. 624, 628 (1890)).

The United State Supreme Court has provided guidelines for the proper application of such a rule of lenity:

> When Congress has the will it has no difficulty in expressing it – when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When

10

> Congress leaves to the Judiciary the task of imputing
> to Congress an undeclared will, the ambiguity should
> be resolved in favor of lenity.  And this not out of
> any sentimental consideration, or for want of
> sympathy with the purpose of Congress in proscribing
> evil or antisocial conduct.  It may fairly be said to
> be a presupposition of our law to resolve doubts in
> the enforcement of a penal code against the
> imposition of a harsher punishment.  This in no wise
> implies that language used in criminal statutes
> should not be read with the saving grace of common
> sense with which other enactments, not cast in
> technical language, are to be read.  Nor does it
> assume that offenders against the law carefully read
> the penal code before they embark on crime.  <u>It
> merely means that if Congress does not fix the
> punishment for a federal offense clearly and without
> ambiguity, doubt will be resolved against turning a
> single transaction into multiple offenses</u> . . . .

<u>Bell v. United States</u>, 349 U.S. 81, 83-84 (1955) (emphasis

added).

In the present case, it is undisputed that the "gravamen

of the offense" under Code § 18.2-308.2 is "the <u>possession</u> of a

firearm by a felon."  <u>Acey v. Commonwealth</u>, 29 Va. App. 240,

250, 511 S.E.2d 429, 433-34 (1999) (emphasis added).

Furthermore, it has been recognized that "[p]ossession is by

nature a continuing offense."  <u>Jordan v. Virginia</u>, 653 F.2d

870, 875 (4th Cir. 1980); <u>see also</u> <u>Morris v. Commonwealth</u>, 51

Va. App. 459, 467, 658 S.E.2d 708, 712 (2008).  "A continuing

offense is a continuous, unlawful act or series of acts set on

foot by a single impulse and operated by an unintermittent

force, however long a time it may occupy."  <u>United States v.</u>

11

Midstate Horticultural Co., 306 U.S. 161, 166 (1939) (internal quotation marks omitted).

It has been recognized that

cases involving multiple convictions under a single statutory provision. . . . are often referred to as "unit of prosecution" cases, as they consider whether the conduct at issue was intended to give rise to more than one offense under the same provision.

United States v. McLaughlin, 164 F.3d 1, 14 (D.C. Cir. 1998) (emphasis added). The present case is clearly a unit of prosecution case as it only involves a single statute: Code § 18.2-308.2(A). In applying the rule of lenity espoused in Bell to a unit of prosecution case involving a continuous offense, such as possession, appellate courts have overwhelmingly held that a continuous offense can only be charged as a single offense. See United States v. Ellis, 622 F.3d 784, 793 (7th Cir. 2010); United States v. Hope, 545 F.3d 293, 296 (5th Cir. 2008); United States v. Finley, 245 F.3d 199, 208 (2d Cir. 2001); United States v. Rivera, 77 F.3d 1348, 1351 (11th Cir. 1996); United States v. Horodner, 993 F.2d 191, 193 (9th Cir. 1993); United States v. Jones, 841 F.2d 1022, 1023 (10th Cir. 1988), (recognizing that "ambiguity in the definition of conduct to be punished must be settled against turning a single transaction into multiple offenses").

I am particularly persuaded by the United States Court of Appeals for the Sixth Circuit's decision in United States v.

12

Jones, 533 F.2d 1387 (6th Cir. 1976). The facts of Jones are markedly similar to the present case as both cases involve a convicted felon who was observed to have possession of the same firearm on three separate occasions over a three year period which ultimately resulted in three convictions for possession of a firearm by a convicted felon. Id. at 1389-90. In reversing two of the convictions, the Sixth Circuit explained:

> It is true that in the case at bar the Government is claiming that Jones possessed the pistol on three separate occasions, not that continuous possession existed which has been broken down into arbitrary time period[s]. With equal propriety the Government might have charged Jones with possession on more than 1100 separate days and obtained convictions to imprison Jones for the rest of his life. The fact that the Government merely has proof that he possessed the same weapon on three separate occasions, rather than continuously for a three-year period, should not dictate the result that Jones could receive three times the punishment he would face if continuous possession for a three-year period were proved. There is no proof that there was any interruption in the possession by Jones of the weapon.

Id. at 1391 (emphasis added). The majority in this case, however, would require a different result.

I am also not persuaded by the majority's reliance on the General Assembly's inclusion of "specific prohibitions." The plain language of Code § 18.2-308.2(A) prohibits a convicted felon from

> knowingly and intentionally possess[ing] or transport[ing] any firearm or ammunition for a firearm, any stun weapon as defined by § 18.2-308.1,

13

> or any explosive material, <u>or</u> . . . knowingly and intentionally <u>carry[ing] about his person, hidden from common observation</u>, any weapon described in subsection A of § 18.2-308.

(Emphasis added.)

In making its argument, the majority fails to recognize the significance of the disjunctive "or" that immediately proceeds the "specific prohibitions" upon which it relies as well as the subsequent change in verbiage regarding the prohibited acts. As evidenced by the use of the word "or," possessing a firearm can be distinguished from carrying a concealed weapon. While every weapon that is concealed is possessed, not every weapon possessed is concealed. Indeed, it is worth noting that the "specific prohibitions" set forth in Code § 18.2-308.2(A) do not prohibit a convicted felon from <u>possessing</u> many of the weapons delineated (firearms being the obvious exception); rather, that portion of the statute only prohibits a convicted felon from carrying and concealing those weapons about his person. Thus, had Baker been charged with carrying a concealed firearm on each of the three occasions, only then would the specific prohibitions be applicable.

Moreover, the presence of this change in verbiage clearly demonstrates the General Assembly's ability to distinguish a distinct unit of prosecution where it elects to do so. In the absence of such an election by the General Assembly, the

14

statute is clearly ambiguous and our jurisprudence requires that we apply the rule of lenity.  See Waldrop, 255 Va. at 214, 495 S.E.2d at 825.  In my opinion, the proper course of action is to follow the guidelines established in Bell.  Such application would necessarily require this Court to hold that the General Assembly only intended to punish as a single offense all acts of dominion demonstrating uninterrupted possession of the firearm.  If the General Assembly had intended to punish each time a felon is witnessed to be in possession of a firearm, as the majority suggests, it could have done so by forbidding each act of dominion instead of the entire course of conduct.

It is further worth noting that the majority's stated holding necessitates reversal in the present case.  The majority specifically holds that "a new offense of possession can be established with each separate act or occurrence that can be proven by the government."  However, as previously discussed, possession is a continuing offense.  Therefore, it is axiomatic that, in order for there to be a separate act or occurrence of possession, there must be some form of interruption in the initial act or occurrence of possession. See, e.g., Rivera, 77 F.3d at 1351 ("Where there is no proof that possession of the same weapon is interrupted, the Government may not arbitrarily carve a possession into separate

15

offenses"); <u>United States v. Conley</u>, 291 F.3d 464, 470 (7th Cir. 2002) ("a felon may be charged and convicted of two counts of possessing the same firearm only if: (1) he possesses the weapon; (2) he is aware that his possession of the weapon has been interrupted; and (3) he thereafter reacquires possession of the weapon himself."). In other words, the defendant must have been dispossessed of the firearm before there can be a separate act or occurrence of possession. As there is no evidence of Baker being dispossessed of the firearm, there is only a single act or occurrence of possession.

For all the foregoing reasons, I cannot join in the majority's opinion. Rather, I would hold that a proper application of the rule of lenity demonstrates that the evidence in the present case only supports one conviction for Baker's continuous possession of the firearm. Accordingly, I would reverse the decision of the Court of Appeals, affirm the trial court as to one count of possession of a firearm by a convicted felon and dismiss the remaining two counts of possession of a firearm by a convicted felon.